## PICKETT *v.* FOSTER.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF LOUISIANA.

No. 175. Argued and submitted March 24, 1893. — Decided May 15, 1893.

The Supreme Court of Louisiana having decided that under the positive law of that State, as contained in the code and statutes, nothing supplies the place of the registry of a mortgage or dispenses with it, so far as those who are not parties to it are concerned; and when ten years have elapsed from the date of inscription without reinscription the mortgage is without effect as to all third persons; and further, that the failure to reinscribe a mortgage within the statutory period is not remedied or supplied by the pendency of a suit to foreclose the same; such decisions establish a rule of property binding upon the Federal courts.

In a suit brought in December, 1873, by the heirs of P. in the name of L. the public administrator, to foreclose a mortgage on property in Carroll Parish, Louisiana, given to secure three notes dated January 1, 1866, and payable one, two and three years after date, it appeared that L. had not previously to the institution of the suit, as required by the statute, been appointed by the parish judge to administer the estate of P., F. who had been joined as a party defendant in the suit as third possessor of the land, pleaded an exception to such omission, and no action having been taken upon such pleading by the plaintiffs, in December, 1875, the suit was dismissed. Prior to such dismissal, in April, 1875, L. had ceased to

be public administrator, and F. had been appointed in his place; *Held*, that in the absence of proof of actual fraud on the part of F. the mere fact that he had accepted the office of public administrator, did not impose upon him the duty of causing the mortgage referred to to be reinscribed, and further, the notes secured by the mortgage having become prescribed by lapse of time sixteen months before his acceptance of the office, such acceptance did not place him in any fiduciary relation to the holders of such notes.

THIS was a suit in equity, brought in the Circuit Court of the United States for the Western District of Louisiana, to foreclose a mortgage which the complainants alleged to have been given in favor of their ancestor, James C. Pickett, of the District of Columbia, upon a plantation situate in the parish of Carroll, (now East Carroll,) Louisiana, by the mediate grantors of the present occupant of the property, Mrs. Mary J. Gwyn, wife of George Foster. The bill charged that the existence of any impediments which might serve to prevent the enforcement at law of their alleged rights in the property was the result of various fraudulent acts and breaches of trust on the part of the defendants; and the defendants denied the allegations of fraud and bad faith, and said that if the mortgage was ever operative upon the property, it had become prescribed through the laches of the complainants. As the contentions of the parties are based largely upon the effect of certain litigation previous to the filing of this bill, and upon various mortgages and transfers of property, the facts in relation thereto, as they appear in the record, are stated below in chronological order.

In January, 1866, Mrs. Agnes M. Ricketts and Mrs. Narcissa J. Bell, daughters and devisees of Jonathan Morgan, late of the parish of Carroll, Louisiana, then deceased, executed to the order of James C. Pickett, of Washington, D. C., their three joint promissory notes, in the respective amounts of $5500, $6000, and $6500, dated January 1, 1866, and payable, the first in one year, the second in two years, and the third in three years from the date thereof, at the Farmers' Bank of Frankfort, Kentucky, without interest. To secure the payment of the notes they conveyed, on January 16, 1866, by an act passed before a commissioner of deeds for the State of

Louisiana, in the city of Memphis, Tennessee, the undivided two-thirds of the said plantation, being described in the deed as all their interest in the property, to Richard C. Ricketts, Sr., of Midway, Kentucky, in trust. The instrument of conveyance contained the following condition:

"Now, therefore, the condition on which the said grant is made and on and for which this trust is created is, that the said trustee shall hold the said property in trust for the payment of the said notes in whatsoever hands they may come, and in case they should all be paid at maturity of the same this deed shall be null and void and of no effect in law ; otherwise it shall be and remain in full force and vigor, and the said trustee shall have the right, on request of the holder or holders of any of the dishonored paper above named, to take possession of the estate hereby conveyed and foreclose this deed of trust and the interest of the said grantors in the property aforesaid; and till default in the payment of said notes, or either or any part of them, the said grantors shall have the right to the possession of the said estate hereby conveyed; and in full payment of the said notes it is understood and agreed that the said trustee shall make such reconveyance of said estate hereby conveyed to said grantors as may be necessary under the laws of Louisiana to extinguish the lien of this instrument."

On January 25, 1867, Ferdinand M. Goodrich, of Carroll Parish, Louisiana, filed petitions in the office of the clerk of the District Court of said parish, averring that on or about April 20, 1859, he had filed in that court his account as tutor of Agnes A. Morgan and Narcissa J. Morgan, showing a balance in his hands in their favor of $1263.21, which account, after due notice, etc., had been regularly homologated, and that between April 20, 1859, and March, 1862, they had become severally indebted to him in the respective amounts of $3498.71 and $903.79. The reason given by the petitioner for the inequality of the accounts sued upon was that Agnes A. Morgan had left school earlier than Narcissa J. Morgan. He stated that within the period indicated the said devisees of Jonathan Morgan had become emancipated and had taken

possession of their property, and he prayed that the accounts might be duly homologated and judgments given in his favor for the amounts named, with interest from March 15, 1862, and that his tutorship might be determined and his sureties released. Confessions of judgment, in the amounts named in the petitions were filed by the said defendants, each confession embodying a waiver of service of the petition, and of copies of accounts and vouchers, citation, etc., and a full concurrence in the petitioner's prayer. Thereupon the clerk of the District Court of the parish entered judgments for the said amounts against Mrs. (Morgan) Ricketts and Mrs. (Morgan) Bell, dated, respectively, January 25 and January 26, 1867, approving and homologating the accounts, releasing the petitioner from his trust as tutor, and cancelling his bond. Each judgment concluded as follows: "It is further ordered, adjudicated, and decreed that . . . the legal or tacit mortgage in favor of said tutor be recognized, to date from the 3d of December, 1855."

No orders of sale under the judgments appear in the record, but on June 21, 1868, writs of *fieri facias,* under the seal of the said court, were issued, directing the sheriff of the parish of Carroll to seize and sell the property, real and personal, rights and credits, of Mrs. Agnes M. Ricketts and Mrs. Narcissa J. Bell, (then Green,) to satisfy the judgments, and under those writs their respective interests (described in the sheriff's deeds as eleven-sixteenths) in the said plantation were sold by the sheriff, at public auction, on June 21, 1868. The interest of Mrs. Ricketts was bought by the said Goodrich, at the price of $1734, and John H. Green became the purchaser of Mrs. Green's interest, at the same price. Deeds were executed by the sheriff on September 5, 1868, to the said purchasers.

December 18, 1868, Goodrich conveyed to Mrs. Ricketts the property acquired by him at the sheriff's sale for the sum of $4000, taking her notes for that amount in payment.

Written in red ink across the face of the said mortgage or deed of trust, recorded in the office of the clerk of the parish of Carroll, appears the following:

"Erased in full, evidence the return of the sheriff in suit of Ferd. M. Goodrich, tutor, vs. Agnes M. Ricketts and Narcissa J. Bell, on file in the office of the clerk of the District Court, and the demand of Ferd. M. Goodrich that the mortgage be erased. Floyd, La., December 19th, 1868. A. G. Beldon, D'y Recorder."

December 18, 1869, the sheriff of the said parish sold, under writs of *fieri facias*, the undivided five-sixteenths of the Jonathan Morgan plantation, which had been the interest of Oliver T. Morgan in the same, to Goodrich, for the sum of $915.91, and a deed was executed to Goodrich by the sheriff on the following day. It appears by the record that the issuance of the writs was the result of suits brought against Oliver T. Morgan by the New Orleans Canal and Banking Co., and by Mrs. Rosa Cammack. On May 23, 1870, Goodrich sold to John H. Green one-half of his undivided five-sixteenths interest in about 1637 acres comprised within the said plantation, for $5000 cash.

May 23, 1870, Mrs. Agnes M. Scanlan (formerly Ricketts) mortgaged her share in the plantation, described in the conveyance as consisting of about 794 acres, to the firm of Foster & Gwyn, of New Orleans, Louisiana. It was stated in the mortgage that it was executed to secure the payment of a debt of $19,000, due by Mrs. Scanlan to the firm, that she had executed her promissory note for that amount, bearing even date with the mortgage, and that the note had been delivered by her to George Foster, a member of the firm. On the same day John H. Green executed a mortgage, in favor of Foster & Gwyn, upon his portion of the plantation, to secure, as the instrument recited, a debt of $10,000 due by him to the firm, evidenced by his promissory note for that amount, dated the same day, and delivered to Foster.

February 5, 1873, Mrs. Scanlan conveyed to Foster a portion of the said plantation, described as containing about 764 acres. It would appear by the description of the property in the deed that there had been a partition between Mrs. Scanlan and John H. Green of their interests in the plantation. Foster states in his testimony in chief in this case that such a partition

was made on May 23, 1870. The deed from Mrs. Scanlan to Foster recited that, in accordance with the terms of a contract previously entered into between them, Foster agreed to acquire and make his own a certain debt, secured by mortgage, held against Mrs. Scanlan by the firm of Foster & Gwyn, and certain judgments against her husband, held by the firm, and to transfer the judgments against her husband, to be held by her for her own use and benefit. The deed also recited that the sale was made in consideration of the sum of $36,904.94, the total amount of the said debts.

By virtue of a writ of seizure and sale issued out of the Circuit Court of the United States for the District of Louisiana, at the suit of *Ezra Wheeler & Co.* v. *John H. Green*, the United States Marshal for that district sold, on August 2, 1873, at public auction, Green's portion of the plantation, described as containing about 872 acres, to Ezra Wheeler & Co., at the price of $10,398. The marshal's deed to the purchasers, dated the same day, recited that the total amount of their mortgage on the property conveyed was $19,533.45, and that after paying the expenses of sale the purchasers retained in their hands the difference between the amount of such expenses and that of the purchase price, to apply to the mortgage debt.

December 23, 1873, B. H. Lanier, public administrator of Carroll Parish, commenced an action in the District Court of the parish to enforce the sale of the two-thirds interest in the plantation formerly held by Mrs. Scanlan and Mrs. Green, to satisfy the mortgage executed by Mrs. (Ricketts) Scanlan and Mrs. (Bell) Green to James C. Pickett, the petition alleging that the said instrument, though in the form of a deed of trust, was, according to the law of Tennessee, where the common law prevailed, a mortgage. Ezra Wheeler, Thomas Rounday, Augustus Ireland, and John V. Wheeler, composing the firm of Ezra Wheeler & Co., absentees, and C. M. Pilcher, of said parish, who had been appointed *curator ad hoc*, were cited, as were also Mrs. Agnes M. Scanlan, Mrs. Narcissa J. Green and George Foster. The defendants filed an exception, June 2, 1874, alleging that Lanier had no cause of action, as he had never legally qualified as public administrator by taking the

oath of office and giving bond, and, further, that there was never any such succession as that claimed to be represented by Lanier, as James C. Pickett had never resided in or owned property in the parish. They therefore prayed that the suit might be dismissed. It appears by a certificate of the secretary of State of Louisiana, copied into the record, that Lanier was appointed public administrator of the parish on August 30, 1871, and that on September 16, 1871, he filed in the office of the secretary of State his oath of office and his official bond.

December 10, 1874, the sheriff of Carroll Parish sold Foster's portion of the plantation (about 764 acres) for his unpaid taxes, to W. A. Gwyn, for the sum of $1505. On the same day the portion of the property purchased at the sheriff's sale of August 2, 1873, by Ezra Wheeler & Co., was sold by the sheriff for unpaid taxes due from Green, to W. A. Gwyn, at the price of $1001. Deeds were executed to the purchasers on the day of the sales.

April 29, 1875, George Foster was appointed public administrator of Carroll Parish, and on the same day he filed in the office of the secretary of State of Louisiana his official bond, in the sum of $10,000. On November 29, 1875, Lanier and Foster were called by the said district court of the parish to prosecute the said suit instituted by Lanier to enforce a sale of the property covered by the Pickett mortgage. Lanier answered, through his counsel, that he was no longer public administrator, and Foster answered that he knew of no such succession as was called to be administered. The court then ordered that the suit be dismissed. The case was again called December 4, 1875, for trial. Lanier appeared, by counsel, and gave the same answer as before, and Foster answered, by counsel, that he had never had charge of any such succession as that of James C. Pickett, and knew of no such estate in the parish; whereupon an order of the court was entered dismissing the suit.

By a decree in the case of the *Fourth National Bank of New York* v. *George Foster*, in the District Court of the parish of East Carroll, (formerly Carroll,) Louisiana, dated Octo-

ber 17, 1881, Alexander H. Foster, intervenor, obtained judgment against the defendant for the sum of $2200.

December 5, 1881, Mrs. Mary J. Gwyn, wife of George Foster, commenced an action against him in the District Court of East Carroll Parish, setting out her marriage to the defendant, and averring that the sum of $2986.76 standing to her credit in the hands of Foster, Gwyn & Co., of the city of New York, on July 1, 1872, and for which amount she held the firm's note, was due and unpaid; that her husband had received the money and used it for his own purposes, and that owing to the disorder of his affairs she feared that he would not be able to repay the amount, and that she would lose it. She, therefore, besought the court to allow the institution of the suit and cause her husband to be cited, and prayed that the community of acquets and gains subsisting between them might be dissolved ; that she might be allowed to administer her own affairs free from the control of her husband; and that judgment might be rendered against her husband for the amount of the debt, with interest. The petitioner having been authorized to institute the suit, the defendant answered, admitting the marriage, but denying the other averments of the plaintiff, and prayed for the dismissal of her demand.

December 16, 1881, W. A. Gwyn conveyed the property purchased by him at the said tax sales to Foster, for the sum of $5000 cash, and on October 24, 1881, Ezra Wheeler, on behalf of the firm of Ezra Wheeler & Co., conveyed the property acquired by them at the said judicial sale thereof, retaining a vendor's lien upon the same, to Foster, for the sum of $7243, of which, as stated in the conveyance, $2243 was paid in cash, and the balance in two accepted drafts on A. H. Foster, of Evansville, Indiana. The deed from Wheeler to Foster contained a stipulation that it should not be complete, and should not be recorded, until Foster should have executed a mortgage on the property conveyed in favor of the vendors.

December 29, 1881, George Foster mortgaged the property conveyed to him by Gwyn and Wheeler & Co. to John W.

Foster, of the District of Columbia, the instrument of mortgage reciting that on that day George Foster had executed his promissory note in favor of the said John W. Foster, in the sum of $6000, payable January 10, 1885, with interest at 8 per cent thereon after maturity, and that the mortgage was given to secure the payment of the note.

July 5, 1882, the suit brought by Mrs. Mary J. Gwyn against her husband, George Foster, was called. The case was regularly tried, judgment given for the plaintiff, and the substance of the prayer of the petition embodied in a decree of the court, dated July 6, 1882. The judgment being, on May 5, 1884, unsatisfied, the court on that day ordered that the property of George Foster be sold to satisfy the same, and under a writ of *fieri facias* the sheriff of the parish sold, at public auction, May 6, 1884, a portion of the said plantation, described as containing about 1100 acres, to Mrs. Mary J. Gwyn, for the sum of $15,414.93. The sheriff's deed, dated July 8, 1884, stated that this was the amount of the mortgages on the property, and that such amount was retained in the hands of the purchaser to pay the same.

All the above-described deeds and mortgages were duly recorded in the office of the clerk of the district court of the said parish. It does not appear in the record that any of the mortgages were ever reinscribed, except the one executed in favor of James C. Pickett, which was reinscribed in the said office on November 4, 1885.

The suit in equity now before the court was commenced in the Circuit Court of the United States for the District of Louisiana, on November 30, 1885, by Joseph Desha Pickett and Theodore John Pickett, citizens of Kentucky, against George Foster, and his wife, Mary J. Foster, citizens of Louisiana, Mrs. Agnes M. Scanlan and Mrs. Narcissa J. Green, citizens of Missouri, and Ezra Wheeler, Thomas Rounday, and Augustus Ireland, composing the firm of Ezra Wheeler & Co., citizens of New York. The plaintiffs averred in their bill that they were the heirs-at-law of James C. Pickett, who died intestate in December, 1872, and that the suit was brought to foreclose a mortgage which had been held by their ancestor upon the said planta-

tion, which had been given by Mrs. Scanlan and Mrs. Green to secure the unpaid promissory notes above described. They alleged that Foster's conduct as public administrator was fraudulent and in bad faith, in that he failed to prosecute, as it was his duty to do, the foreclosure proceedings in the action of Lanier against Wheeler & Co., and others, of which proceedings he had knowledge, having been cited as one of the defendants therein ; that he sought and obtained the office of public administrator solely for the purpose of dismissing the suit, and did procure the dismissal thereof; that having so caused the suppression of that suit, for the purpose of destroying the rights of the Pickett succession, resulting from the mortgage upon the plantation, he refused to institute any other proceedings to foreclose the mortgage, and withheld from the complainants all information with regard to the enforcement of their claim ; and that, while public administrator, he purposely neglected to reinscribe the mortgage, and refused to take any steps, after procuring the dismissal of the said suit, to prevent the complainants' claim from being barred by the statute of limitations. It was alleged that Foster, by virtue of his appointment as public administrator, obtained absolute control over the said claim, and occupied toward the complainants the relation of trustee; that by the laws of Louisiana his official bond operated as a legal mortgage on all the immovable property owned by him since May 6, 1875, when the bond was recorded; and that the complainants were entitled to the benefit of such mortgage for the purpose of making up any discrepancy that might exist between the amount of their debt, with interest, and the present value, namely $20,000, of the property covered with the Pickett mortgage. The complainants averred that they had no knowledge of the unlawful conduct of Foster in reference to their claim upon the property, and could get no information concerning the same, until October 31, 1885, when Joseph D. Pickett sent his son from Kentucky to East Carroll Parish, Louisiana, to examine the matter.

Other averments and allegations of the bill were substantially as follows : That Foster procured the sale of his property for his taxes, that the sale was irregular and illegal, and

that the reconveyance from Gwyn to Foster was a part of a scheme of fraud between them, the object of which was that Gwyn should hold the title for Foster's benefit until sufficient time should elapse for the prescription of the complainants' claim, and then reconvey the property to Foster. That the title taken in the name of Ezra Wheeler & Co. was a mere show, and the result of a fraudulent effort on Foster's part to disguise the fact that he was claiming to own the property and to prevent the plantation from being subjected to sale under the said mortgage. That the mortgage executed by Foster in favor of his brother John W. Foster, and the judicial mortgage in favor of his brother Alexander H. Foster, as well as a mortgage executed on November 30, 1881, in favor of Ezra Wheeler & Co., were fraudulent and collusive, and were concocted by Foster and his brothers and Ezra Wheeler & Co. for the purpose of putting the plantation beyond the reach of the complainants' demand, and that Ezra Wheeler & Co. never pretended to be the owners of the property. That the judgment obtained by Mrs. Foster in her suit against her husband was the result of a scheme concocted by Foster and his wife, in the interest of Foster, for the purpose of screening the plantation from the operation of the said mortgage and from such demands as the complainants had against Foster on account of his fraudulent acts as public administrator. That as the sheriff's sales to Goodrich and Green in 1868 were made for a less sum than the amount of the Pickett mortgage, they were in contravention of a prohibitory law of Louisiana, and therefore nullities. That Foster had been in actual possession of the plantation, as owner of the same, since February 5, 1873.

The complainants further alleged that they had no relief at law, but in equity ought to be relieved against the frauds, collusions, and combinations of Foster, his wife, his brothers, Ezra Wheeler & Co., and his wife's brother, W. A. Gwyn. They, therefore, asked the court to decree that Foster and his wife held the property described in the Pickett mortgage subject to the same; that that mortgage was and had been a subsisting mortgage dating from January 16, 1866; that

the property be sold and the proceeds of sale be paid to the complainants, in priority over all claims of the defendants; that an account be taken of the rents and profits made, or which might have been made, by Foster since he acquired possession of the mortgaged property; that Foster, in his capacity as public administrator, be adjudged to pay of such rents and profits any balance remaining due the complainants upon their mortgage debt after the proceeds of the sale had been applied thereto; and that the complainants had a general mortgage upon the whole of the property to secure the amounts aforesaid, as provided by the laws of Louisiana in reference to the liability of public administrators upon their official bonds.

To the bill demurrers were filed by Foster and his wife, on January 30, 1886, which were dismissed on March 8, 1886, by consent of the defendants, and on April 5, 1886, they filed answers. The answer of Foster alleged that as the laws of Louisiana prohibited the creation of trust estates, the registry of the Pickett mortgage or deed of trust in the mortgage books of the parish of Carroll did not so operate upon the property therein described as to affect third persons; that the effect of the judgment in the actions brought by Goodrich, which actions and judgment were in all respects *bona fide* and regular, was to prevent the operation of all subsequent encumbrances upon the property so sold, and pass the same free and unencumbered to the purchasers. The defendant averred that the sheriff of the parish caused, as by law he was bound to do, the pretended mortgage or deed of trust to be erased from the mortgage records of the parish, and that the same was not thereafter borne upon the records as notice to third persons of the existence of any claim in favor of Pickett or the *cestui que trust* named in the instrument; that Goodrich and Green were purchasers at the said sales in good faith, and for valuable consideration, and went into possession of the property under deeds duly executed and recorded, and that the said purchasers and their subsequent vendees have had actual and adverse possession of the property since September 5, 1868. The defendant Foster pleaded, therefore, the prescription of ten years in

bar of the complainants' action to annul the effect of such possession, and the prescription of five years in bar of their action to annul the said sales by reason of the failure of the sheriff to observe any formality with relation thereto.

The answer described Foster's connection with the property as follows : At and before the time of the sale by Goodrich to Mrs. Ricketts, of the undivided portion of the property purchased by Goodrich at the sheriff's sale, Foster was a member of the firm of Foster & Gwyn, cotton factors, of New Orleans. That firm entered into business relations with Mrs. Ricketts, and, in good faith, and without any knowledge whatever of the suit by Goodrich, or of the pretended mortgage or deed of trust upon the property, advanced and loaned to her, in money and supplies to be used in the cultivation of the plantation, the sum of $19,000. In recognition of this debt Mrs. Scanlan, with the authority of her husband, executed her promissory note for the amount thereof, dated May 23, 1870, payable one year after date, with interest at six per cent, and to secure the payment of the same she executed, on the same day, a mortgage upon the property in favor of the firm. Fruitless efforts having been make by the firm, prior to February 5, 1873, to collect the debt, a compromise of the differences between the parties was entered into, by which it was agreed, among other things, that Foster should acquire the entire interest of the firm in the debt and mortgage against Mrs. Scanlan, and buy up a certain judgment and mortgage held by the firm against her husband, and release the debt held against her personally, and transfer the judgment and mortgage against her husband, to be held for her own use and benefit, in consideration of which she agreed to transfer to Foster all said property. On February 5, 1873, this agreement was carried into effect by an authentic act passed before a notary of the parish of Carroll, by which, for the said consideration, aggregating in amount $36,904.94, Mrs. Scanlan, by the authorization of her husband, transferred to Foster the property acquired by her from Goodrich. The said advances were made to Mrs. Scanlan in good faith, in the due course of business, and in the full belief that she had an unencumbered title to

the property. If Foster had been aware that there was any cloud upon her title, his firm would not have made the advances, and he would not have expended a large sum of money in the acquisition of the property. The firm of Foster & Gwyn had also been engaged in business transactions with John H. Green, who purchased at the sheriff's sale the interest of Mrs. Narcissa J. Green in the plantation. In the full faith that Green held an unencumbered title to the property, the firm made large advances to him, and he, on May 23, 1870, executed his promissory note in their favor for the amount thereof, namely, $10,000, payable twelve months after date, and to secure the payment of the same mortgaged to Foster & Gwyn, or any future holders of the note, the said property. He also executed two additional mortgages in favor of the firm, the one dated July 14, 1871, and the other March 11, 1872, to secure the payment of promissory notes for the respective amounts of $3723.60 and $3009.55. The said firm was indebted to Ezra Wheeler & Co., of the city of New York, and transferred to them the notes belonging to Foster & Gwyn as collateral security, both firms believing the notes to be secured by the said mortgages. The notes not having been paid when due, the firm of Ezra Wheeler & Co. proceeded lawfully to enforce the sale of the property under the mortgages, and at the sale thereof purchased the property for the sum of $10,398.20, which amount, less expenses, was entered as a credit upon the writ of seizure and sale. Foster & Gwyn were indebted to Ezra Wheeler & Co. in a much larger sum than that amount, and on or about October 6, 1873, Ezra Wheeler & Co. agreed with Foster that upon the payment by him of the principal and interest of the debt due them they would sell and transfer the property to him; and in order to enable him to pay the debt, they agreed that he should have the benefit of the rents and revenues of the property, such profits to be applied to the interest of the debt. On the day the agreement was made Ezra Wheeler, representing the firm of Ezra Wheeler & Co., executed a written power of attorney, under which Foster, as the agent of the firm of Ezra Wheeler & Co., was authorized to take possession of the property and

to collect the rents and revenues thereof. By virtue of this power of attorney Foster took possession of the property and occupied it until October, 1881, at which time, he having paid the debt due by Foster & Gwyn to Ezra Wheeler & Co., with the exception of $7250.43, the firm of Ezra Wheeler & Co., in consideration of that amount, sold and transferred the property to him. Part of the purchase price, namely, $2243, was paid in cash, and the balance in duly accepted drafts on A. H. Foster, secured by a vendor's lien on the property conveyed. This transaction was conducted in good faith, for the purpose of carrying out the commercial contracts and agreements between the parties thereto.

It was denied in the answer that Lanier was ever appointed administrator of the estate of James C. Pickett, or ever qualified as such; that any inventory was made, or any act done to show the existence of such estate in Louisiana; that such estate could have been legally opened in that State, for the reason that James C. Pickett was not a resident thereof, and left no property therein; that that suit was dismissed through any fraudulent design on the pa ˙ of Foster to suppress the same, or to defraud the estate or heirs of James C. Pickett; that Foster concealed from the complainants any information in relation to the notes or property; that he was bound to give them any information in regard to the same; that the complainants were relying upon Foster, as public administrator, or upon any other administrator, to enforce the payment of the notes; and that Foster obtained the office of public administrator for the purposes alleged in the complainants' bill. The answer averred the facts to be that the name of Lanier, as public administrator, in the suit instituted to enforce the payment of the notes, was used by the party in possession of the notes for the purpose of bringing suit on the same without any legal authority for so doing, and that Lanier himself had no official power to act in the matter. That Foster was absent from the State at the time the suit was called out and dismissed; and that his attorney refused to prosecute the same or to make him party thereto for the reasons that no such estate as that of James C. Pickett had been opened in the parish of Carroll, that the public administrator

had not been appointed to take charge of or administer any such estate, and that the notes were not on file in the suit. That if the said notes were in the parish of Carroll at that time, they were in the possession of the owners thereof, who returned them to the persons from whom they had received them, with full information of what had been done, and the existing condition of the claim and of the property; and that the owners of the notes were advised and believed that under the laws of Louisiana the pretended mortgage was void and could not be enforced. That Foster was not aware who were the owners of the claim or of the names or residence of the complainants; and that he had no authority to prosecute the said suit for the reasons above stated. That Foster only accepted the office of public administrator of the parish of Carroll at the earnest solicitation of citizens thereof.

The charges in the bill of fraud on the part of Foster in connection with the tax sales to Gwyn were denied, as were also similiar charges with reference to the suit brought against Foster by Mrs. Mary J. Gwyn, his wife. The answer averred that that suit was instituted and defended in good faith; that Foster owed his wife the amount sued for, which fact he averred was established by competent and credible evidence; that the proceedings were fairly and legally conducted, and that the judgment was rendered in accordance with the laws of the State of Louisiana. It was denied that Foster had, since the execution of the judgment, been in possession of the property, except as the agent of his wife.

Finally the answer averred that all the allegations of the bill charging Foster's transaction with Ezra Wheeler & Co., A. H. Foster and John W. Foster, as being fraudulent, were false and untrue, and that all those transactions were conducted in good faith, without fradulent intent, and without any reference to the claim of the complainants.

The answer of Mrs. Foster averred that she was no party to the suits of Goodrich against Mrs. Ricketts and Mrs. Bell; that at the time she acquired the property at the sheriff's sale under her judgment against Foster he was, as she believed, the lawful owner thereof; that by her purchase under that

judgment she had obtained and had since held the actual possession of the property; and that the proceedings and judgment in her suit against her husband was in all respects regular and *bona fide*, and free from fraud or collusion. She alleged that she acquired her title to the property free from any latent defects therein, and that under the laws of Louisiana the mortgage or deed of trust sued upon by the plaintiffs was void and of no effect against third persons. She pleaded the prescription of five years as against the validity of the notes sued upon by the complainants, upon the ground that no suit was instituted within that time to enforce their payment, and the prescription of ten years as against the mortgage, which she averred was not reinscribed until she became the owner of the property. She also, for cause of demurrer alleged that any proceedings to avoid the sales made to Goodrich and Green of the property of Mrs. Ricketts and Mrs. Bell, were barred by the prescription of five years, as she said, would appear by the complainants' own showing. For further cause of demurrer she alleged that the good faith of Goodrich and Green in making the said purchases was not denied by the bill, and that Goodrich and Green having acquired good titles, and their vendees having had actual possession of the property for more than ten years before the institution of the complainants' suit, all actions to annul the titles of the said vendees became barred by the lapse of ten years from the date of their several purchases.

Mrs. Scanlan and Mrs. Green admitted, in the answer filed by them on April 12, 1886, that they borrowed the money, and executed the mortgage, as alleged in the bill; the legal proceedings were instituted against them to collect the notes; and that they were unable to pay that debt, as well as others. They averred that long ago they were dispossessed of the property under judicial proceedings, and they denied all manner of unlawful combination and confederacy on their part.

The case was duly heard in the said court upon bill, answer and evidence, and on October 23, 1888, the bill was dismissed; whereupon the complainants were allowed an appeal to this court.

*Mr. Robert E. De Forest, Mr. N. L. Jeffries* and *Mr. William E. Earle*, for appellants, submitted on their briefs.

Where a mortgage has been cancelled without authority on the books of the recorder of mortgages even on a regular but false certificate given by a notary public, the mortgage exists unimpaired, even against an innocent vendee who has bought on the faith of the certificate. *De St. Romes* v. *Blanc*, 20 La. Ann. 424, 425; *S. C.* 96 Am. Dec. 415; *McCarty* v. *Landreaux*, 8 Rob. La. 130. The erasure or cancellation of a mortgage by the recorder will not bind a mortgagee when done without his knowledge, and he may enforce his rights. *Building Ass'n* v. *Ferguson*, 29 La. Ann. 548.

The instrument under consideration in this case is unquestionably a mortgage, and as such it is to be construed by the laws of Louisiana, where the property lies. *Ricks* v. *Goodrich*, 3 La. Ann. 212. It gives the trustee named therein no authority to sell extra-judicially, and it expressly provides for a foreclosure in case of default.

The notes were payable in one, two and three years after January 1, 1866. Prescription would therefore run against them, in six, seven and eight years respectively. On February 5 and October 6, 1873, George Foster had the title of the mortgages so far as the same could be obtained under a sheriff's sale on a judgment by the clerk of the Orphans' Court. Prescription is only claimed by appellee from January 1, 1874, then not only were all of these suits, sales and conveyances before prescription, but in addition, on December 23, 1873, Lanier as public administrator had begun his suit which was not dismissed until December 4, 1875. This was interruption of the prescription, which to be a bar, must be uninterrupted, *St. Romes* v. *Cotton Press Co.*, 127 U. S. 614, 621. Mary J. Gwyn Foster pleads prescription of five and ten years, and that the mortgage "was not reinscribed within ten years after its original inscription in the mortgage records of Carroll Parish whereby the same became void and null as between the parties." Her title hangs upon a sheriff's sale under a judgment *coram non judice;* her husband's title

which she bought at this sale was obtained before any claim or contention arose that either the notes or mortgage were prescribed. This title involves a question of fraud, as to which the statute does not run until knowledge of the fraud comes home. *Kilbourn* v. *Sunderland*, 130 U. S. 505, 518.

The mortgagors themselves do not plead prescription. Conceding that more than ten years have expired since the inscription of the mortgage, this does not destroy its effect between the contracting parties in such manner as to extinguish it. *Shields* v. *Schiff*, 124 U. S. 351, 358.

The title of the Fosters being shown to rest upon a sale by the sheriff based on an invalid judgment, and to be steeped in a series of fraudulent transactions wherein George Foster was an active participant, action on the fraud was not prescribed, (even if as to fraud prescription was pleaded, and which it seems not to have been,) and the case stands now simply as an action between the mortgagors, who do not plead prescription, and as to whom prescription is unnecessary, and the complainants, who are entitled to a reversal and a decree of foreclosure.

*Mr. Samuel F. Phillips*, (with whom was *Mr. Frederic D. McKenney* on the brief,) for George and Mary J. Foster, appellees.

MR. JUSTICE SHIRAS, after stating the case, delivered the opinion of the court.

Upon the facts disclosed by the pleadings and evidence it is plain that the complainants are not entitled to a reversal of the decree below, dismissing their bill, unless they have sustained their allegations of fraud on the part of George Foster, as public administrator of Carroll Parish, and of such knowledge and complicity therein on the part of Mrs. Mary J. Foster as to deprive her of her alleged title as a *bona fide* purchaser of her husband's interest at a sheriff's sale.

The answer of Foster explicitly denied the charges of fraud contained in the bill, and the answer of Mary J. Foster was, in effect, a plea that she was a *bona fide* purchaser, for a valu-

able consideration, without notice.   Although answers under oath were waived in the bill, and the defendants' responsive answers cannot, therefore, be treated as evidence in their favor, still, upon the issues thus raised, the burthen of proof was upon the complainants.

To sustain their side of the case the complainants put in evidence the promissory notes and the deed of trust securing them, bearing date January, 1866.   They proved the death of James C. Pickett on July 10, 1872; that Joseph D. Pickett, one of said complainants, was on the 20th of May, 1873, appointed his administrator; and that said Joseph D. Pickett and Theodore John Pickett, the other complainant, were the sole heirs-at-law of James C. Pickett.   Joseph D. Pickett testified that on September 27, 1873, he put the notes and deed of trust into the hands of R. M. Scanlan and J. H. Green, who were then the husbands of the makers of the notes, and entered into a written agreement with them, whereby they were authorized to employ attorneys to collect said notes, and also gave them a letter proposing to give the lawyers who should undertake the collection of the claim two-thirds of whatever they should recover, and that the Pickett estate should not be subjected to any expense whatever.   Pickett further testified that he understood that R. M. Scanlan and J. H. Green, in pursuance of this arrangement, employed J. W. Montgomery, a lawyer resident in Carroll Parish, to enforce payment of the claim; that Montgomery procured Lanier, as public administrator, to bring a suit in the district court of the parish; that he, Pickett, was not kept advised of the progress of the suit, and that he never knew that said suit was dismissed until he saw the record of the court, showing such dismissal in September, 1885; that he had no personal knowledge of the history of the suit; that upon learning that the Lanier suit had been dismissed, he sent W. H. Pickett, as his attorney, to Louisiana, who received the notes and mortgage deed from Montgomery, and employed W. G. Wyly to bring the present suit.   He further testified that he had never seen or known Foster till the latter called on him, at his office in Frankfort, Kentucky, on the first day of June, 1886.

Theodore John Pickett, the other complainant, testified that he had no personal knowledge of the suit brought by Lanier; that he did not know that such suit had been brought, nor did he know that the suit had been dismissed on December 4, 1875, till he was so informed by Joseph D. Pickett in September, 1885; and that he never saw George Foster.

William H. Pickett testified that he was present at the interview between Joseph D. Pickett and R. M. Scanlan and J. H. Green, when the agreement was made about the collection of the notes in September, 1873; that in November, 1885, he went, as attorney for complainants, to Louisiana, and inspected the record of the District Court of Carroll Parish, showing that a suit had been brought by B. H. Lanier, as public administrator, and that the same had been dismissed in December, 1875; that he procured the notes and mortgage from J. W. Montgomery, who had been employed by Scanlan and Green, and employed Mr. Wyly to bring the present suit. He does not profess to have any personal knowledge whatever of the facts of the case, except what he acquired by examining the record of the Lanier suit.

J. W. Montgomery testified that he had been employed by R. M. Scanlan to bring suit on the Pickett notes and mortgage; that he procured Lanier, as public administrator, to bring the suit; that when Lanier was superseded by the appointment of George Foster to be public administrator he ceased to have anything further to do with the suit; that he was not Foster's attorney, and that the first he knew of Foster's appointment was the dismissal of the suit shown by the judgment rendered by the court; and that the notes were never in the actual possession of George Foster, nor did he have any control of the suit filed on them after he became administrator.

William G. Wyly and Jesse D. Tompkins testified that they knew George Foster, and that he seemed to be and to act for years past as owner of the Morgan plantation.

In addition to this testimony complainants put in evidence the record of the oath taken by George Foster, as public administrator, and his bond, in $10,000, as such. Also the

records of the suits of one Goodrich against Mrs. Ricketts and Mrs. Bell, afterwards Scanlan and Green, and in which it appeared that Goodrich, as tutor of the said defendants, had entered judgments confessed by them in his favor, and had levied on their interests in the Morgan plantation, and sales and conveyances by the sheriff to said Goodrich of the interest of Mrs. Ricketts, and to John H. Green of the interest of Mrs. Green. Also proceedings and deeds whereby these interests finally became vested in George Foster.

Upon the facts so shown by the complainants, it is difficult to hold that charges of fraud against George Foster, and of complicity therein on the part of Mary J. Foster, can be said to be made out with sufficient clearness to warrant a court of equity in granting the relief prayed for in the bill.

The long periods of time within which the events disclosed in the evidence took place, and the open and avowed character of the several suits and conveyances whereby at last the title to the property became vested in Mary J. Foster, should be considered. Apart from the legal effects of the lapse of time, which we shall consider hereafter, there seems to have been unaccountable delay in the successive steps taken by the holders of these notes and mortgage.

No effort was made by James C. Pickett in his lifetime to collect the notes, although the notes were overdue for several years. His administrator apparently took no steps to collect the notes until visited and aroused to action by the husbands of the makers of the notes, with whom he made a contract by which he agreed to give an attorney unknown and unnamed, two-thirds of the amount which might be collected. He then — although as he himself states he was not informed of what his agents and attorneys were doing — took no further action, and made no inquiries till September, 1885, a period of twelve years. He even says that he did not know into whose hands his agents, Scanlan and Green, had put the notes for collection.

It is no doubt true that the appointment of George Foster as public administrator of Carroll Parish, while there was pending a suit, in the name of Lanier, his predecessor in office,

to collect these notes, and in which he had been cited as one of the defendants, and the subsequent dismissal of that suit, are facts which, if unexplained, might warrant a suspicion that he was aiming to defeat the Pickett mortgage and notes. Still, such a suspicion or inference would not, standing alone, justify upsetting the possession of George Foster, which had existed for a period of twelve years before the filing of the bill, much less could the rights of Mary J. Foster be thereby over-thrown.

Moreover, the character of complainants' claim, upon their own evidence, does not appeal to a court of equity. The fact that Joseph D. Pickett put the notes and mortgage for collection into the hands of Scanlan and Green, the husbands of the makers of the notes, and agreed to give them, or any attorney they might select, two-thirds of the amount that might be recovered, is remarkable. So, too, the fact that Foster's title to the larger part of the plantation came to him by means of a deed of conveyance, dated February 5, 1873, from Mrs. Scanlan, for an alleged consideration of $36,904.94, and the further fact that Mrs. Scanlan did not, in her answer in the present case, repudiate or deny the genuineness or good faith of such deed, suggest very serious doubts of the fairness of the plaintiffs' claim.

But whether or not the plaintiffs' bill could be regarded as sustained by their evidence, if uncontradicted, the case comes before us with a large body of evidence on behalf of the defendants.

George Foster testified that he was a member of the firm of Foster, Gwyn & Co., doing business as cotton factors and commission merchants in the city of New York, and in the firm name of Foster & Gwyn, in the city of New Orleans; that he became acquainted with Mrs. Scanlan and Mrs. Green in 1868; that the New Orleans house did business with them, and advanced them large sums of money and supplies to maintain their plantation; that these transactions commenced in 1868 and continued until some time in 1871; that at that time the plantation belonged to Mrs. Scanlan and John H. Green; that Mrs. Scanlan was indebted to Foster & Gwyn in

the sum of $19,000, for which, in 1870, she gave them her note, secured by a mortgage on her plantation; that John H. Green likewise became indebted to the firm in a sum exceeding $15,000, for which Green gave his notes, secured by a mortgage on his part of the said Morgan plantation; that at the time his firm took these mortgages from Mrs. Scanlan and J. H. Green they knew nothing about plaintiffs' claim, and thought the title to the plantation was good and unencumbered; that his firm in New York borrowed a large sum of money from Ezra Wheeler & Co., of that city, and to secure them Foster & Gwyn transferred to them the notes and mortgages of John H. Green. He further testified that on February 5, 1873, Mrs. Scanlan and her husband conveyed to him the part of the Morgan plantation that belonged to Mrs. Scanlan, for $36,904, composed in part of her indebtedness to Foster & Gwyn; and that, after Ezra Wheeler & Co. had purchased the interest of John H. Green in the Morgan plantation at a United States marshal's sale, he purchased such interest from them, paying about $2200 in cash, and giving a mortgage on the plantation to secure notes for about $5000, at one and two years. He further testified that he was never appointed by the court to be administrator of James C. Pickett; that he never knew of such an estate; that he was never asked, as public administrator, to prosecute or institute any suit for the complainants, nor did they, or any one, ever ask any information from him; that he did not know them or where they resided; that he did not consider that he had ever assumed any responsibility for the complainants; and that he was not present when the Lanier suit was called and dismissed, but was in Cincinnati, and did not know that the attorneys intended to call out the suit and have it dismissed. He testified that the first he ever knew of any deed of trust against the Morgan plantation was long after his firm had made the large advances to Mrs. Scanlan and John H. Green, and at that time the deed of trust had been erased or satisfied of record — to confirm which latter statement he put in evidence a certified copy of such erasure.

The testimony of Mary J. Foster was to the effect that she

had loaned money, received by her from her sister's estate, to the firm of Foster, Gwyn & Company, for which she took their note for $2986.76, two years prior to her marriage to George Foster. This was the debt which was the subject of the suit she brought against George Foster, whereby she became purchaser of his interest in the plantation before the bringing of the present suit.

Edward J. Delony, the judge of the eighth judicial district of Louisiana, testified on behalf of the defendants that when B. H. Lanier resigned his position as public administrator of Carroll Parish, he, the witness, interested himself to get a capable man to succeed him, and persuaded George Foster to apply for and receive the appointment. He says that it required much persuasion to induce Foster to take the office, and only upon the witness agreeing to take principal charge of the business. He appeared for Foster when the Lanier case was called, and as no one appeared the suit was dismissed; that he inquired of Lanier about the notes set up in the suit instituted by him as public administrator, and that Lanier informed him that he did not have nor had he ever seen them. This witness further testified that he never knew of any such estate as that of Pickett, and knew of no property or credits belonging to it, and that he never could find that Lanier, as public administrator, had ever offered any such succession during his term of office as public administrator.

The evidence of both parties, taken as a whole, leaves the allegations of fraud as against George Foster unproved. It is contended that those proceedings of Goodrich against his wards were part of a scheme to defeat the Pickett claims. If this were so, it is very singular that the husbands of those ladies should afterwards be employed as agents by the complainants to enforce these very notes.

Failing to find satisfactory proof of fraud on the part of George Foster, or of participation therein, if fraud there were, by Mary J. Foster, we have then to consider the legal aspects of the case, apart from the allegations of the bill on the subject of fraud.

It is contended, on behalf of the defendants, that the instru-

ment given to secure the promissory notes held by James C. Pickett was not a mortgage within the meaning of the laws of Louisiana, but was a deed of trust, and that accordingly it was not properly inscribed or recorded as a mortgage, and constituted no such lien or encumbrance upon the Morgan plantation as to affect third persons.

To sustain this contention the case of *Thibodaux* v. *Anderson*, 34 La. Ann. 797, is cited. Our reading of that case inclines us to regard it as authority for the defendants' contention, but, in the view we take of the present case, it is not necessary to so decide.

Even if it be conceded that the instrument in question was a valid mortgage, and was duly inscribed as such on March 12, 1866, yet in order to keep it alive to affect third parties the statutory law required that it should be reinscribed within ten years, but the complainants' evidence shows that it was not reinscribed until November 4, 1885. The Supreme Court of Louisiana has decided that, under the positive law of that State, as contained in the code and statutes, nothing supplies the place of registry, or dispenses with it, so far as those are concerned who are not parties to it, and that when ten years have elapsed from the date of inscription without reinscription the mortgage is without effect as to all persons whomsoever who are not parties to the mortgage. *Adams & Co.* v. *Daunis*, 29 La. Ann. 315.

The same court has held that a failure to reinscribe a mortgage within the statutory limit is not remedied or supplied by the pendency of a suit to foreclose the same. *Watson* v. *Bondurant*, 30 La. Ann. 1.

This court has held that those decisions of the Supreme Court of Louisiana establish a rule of property binding on the Federal courts, and that accordingly the Circuit Court of the United States for the District of Louisiana did not err in holding that a mortgage of lands has no effect as to third persons unless it be reinscribed within ten years from the date of its original inscription, and that the pendency of a suit to foreclose does not dispense with the necessity of so reinscribing it. *Bondurant* v. *Watson*, 103 U. S. 281.

As the complainants have failed in making out a case of actual or intentional fraud on the part of George Foster, we cannot hold that, because, in 1875, he accepted the office of public administrator, it became his duty to take notice of the Pickett mortgage and to cause it to be reinscribed. He testifies that he knew nothing about it, except as the record showed an erased mortgage; and, whether the erasure was or was not a proper one, he was under no official duty to inquire into its validity. The notes which the mortgage had been given to secure were all prescribed by lapse of time sixteen months before he was appointed public administrator, and we are unable to see that his acceptance of the office put him in any fiduciary relation to the holders of these notes, even if he had known there were such notes, and who were their holders — a knowledge which he disclaims. Even if the Goodrich suits and sale and the subsequent erasure of the mortgage could be viewed as a fraudulent contrivance between Goodrich and the makers of the notes, no knowledge or participation therein is brought home to Foster except by mere conjecture. Hence if he, in good faith, relied on that erasure, and dealt with Mrs. Scanlan and J. H. Green as the owners of an unencumbered plantation, he must be deemed a third party entitled to the protection of the laws requiring reinscription. Mrs. Scanlan and her husband conveyed her portion of the plantation to Foster for a large consideration on February 5, 1873, twelve years before the institution of this suit. Mrs. Green never repudiated her own act in confessing a judgment to Goodrich, on whose sale her husband became the purchaser, and whether such judgment and sale were in accordance with law or not, the proceedings must, in the circumstances of this case, be deemed as, at all events, equivalent to a conveyance, by her through the sheriff, and as a complete estoppel against her. Her vendees, or those who subsequently became owners for a valuable consideration, without notice, of her part of the plantation, are fairly to be deemed third parties, entitled to the protection of the presumptions arising from lapse of time and failure to reinscribe.

Upon the whole, we are of opinion that the decree of the court below dismissing the bill was right, and it is accordingly

*Affirmed.*