MORRISON, Respondent, v. FARMERS & TRADERS'
STATE BANK et al., Defendants; GOODWIN, Appel-
LANT.

### (No. 5,410.)

(Submitted February 20, 1924.    Decided March 24, 1924.)

### [225 Pac. 123.]

*Real Estate Mortgages—Time During Which Enforceable—
Statute of Limitations—Validity—Interpretation of Statutes.*

Real Estate Mortgage—Purchaser, Subject to Mortgage, not Personally
Liable for Debt.
    1.    The purchaser of real property subject to a mortgage does not
assume any personal liability for the debt secured thereby.

Same—Construction of Statute Declaring Mortgage of More Than Eight
Years' Standing Unenforceable.
    2.    *Held*, that Chapter 27, Laws of 1913 (sec. 8267, Rev. Codes 1921),
declaring that a mortgage on real property, duly recorded, is good
and valid against the creditors of the mortgagor or subsequent pur-
chasers or encumbrancers, for eight years and no longer, unless the
renewal affidavit provided for therein be filed, is not a recording
statute, affecting notice, but is a statute of limitations, affecting
the remedy, the effect of which is that such a mortgage, in the ab-
sence of the renewal affidavit, ceases to be of binding force as
against the persons mentioned and becomes unenforceable by the
lapse of eight years from the maturity of the debt or obligation
secured.

Interpretation of Statutes—What to be Considered.
    3.    In the interpretation of statutes in the case of doubt as to the
legislative intent, which must control, recourse must first be had to
the language employed, indulging the presumption that the terms
used were intended to be understood in their ordinary sense unless
it is apparent that they were intended to be given a different mean-
ing, and if then there be room for doubt as to its intent, the title
of the Act, presumably indicating its intention, may be looked to.

Real Estate Mortgage Does not Transfer Title.
    4.    A mortgage does not transfer any title to the property mort-
gaged; it is merely a lien fixed upon the property to secure the per-
formance of an act or obligation, and therefore when it ceases to be
a lien it ceases to be a mortgage.

Interpretation of Statutes—Function of Courts.
    5.    Under section 10519, Revised Codes of 1921, the office of courts,
in construing a statute, is simply to ascertain and declare what is in
terms or in substance contained therein, not to write into the Act
words which the legislature saw fit to omit.

Real Estate Mortgages—Limitation of Time During Which Valid—Statute
    —Constitutionality.
    6.    *Held*, that Chapter 27, Laws of 1913 (sec. 8267, Rev. Codes 1921)
above, construed as a statute of limitations, is not open to attack
on constitutional grounds.

*Appeal from District Court, Yellowstone County; A. C. Spencer, Judge.*

SUIT by Esther M. Morrison against the Farmers & Traders' State Bank, Anna D. Goodwin, administratrix of the estate of Thomas E. Goodwin, deceased, and others. Judgment for plaintiff and defendant Goodwin appeals. Affirmed.

*Messrs. Waldo & Cunningham,* for Appellant, submitted a brief; *Mr. William B. Waldo* argued the cause orally.

The exact question here in controversy has been before the United States district court for this district in the case of *Cullen* v. *Reed,* 220 Fed. 356. The facts in that case were identical with this, in that the property was purchased during the eight-year period, and was conveyed to the grantee by a deed of general warranty "except as against" said mortgage. The purchaser contended, as here, that the words "subsequent purchasers" in Chapter 27, Laws of 1913 (now section 8267 Rev. Codes) meant a purchaser at any time regardless of good faith, and regardless of the payment of a valuable consideration. The court holds that as against the defendant the renewal affidavit did not need to be filed, for the reason that the grantee "having purchased while the record of plaintiff's mortgage was constructive notice, to say nothing of the actual notice she had," was not a subsequent purchaser within the law. (See, also, *Chester State Bank* v. *Great Northern Ry. Co.,* 58 Mont. 44, 190 Pac. 136.)

We have been unable to find a case in any other state construing a statute identical with the one here under discussion, and at the outset we will frankly admit that the cases we are going to cite contain the element of good faith on the part of the purchaser. However, several of the cases construing statutes containing the words "good faith" in their discussion disregard those words entirely and define the words "subsequent purchaser" without regard to whether those purchasers are in good faith or not. (See *Nix* v. *Wiswell,* 84 Wis.

354, 54 N. W. 620; *Catlett* v. *Stokes,* 33 S. D. 278, 145 N. W. 554; *Slimmer* v. *Meade County Bank,* 34 S. D. 147, 147 N. W. 734; *Howard* v. *First Nat. Bank,* 44 Kan. 549, 10 L. R. A. 537, 24 Pac. 983; *Meech* v. *Patchin,* 14 N. Y. 71.) It is our impression that though in these cases the statute being construed contained the words "good faith," the courts have generally construed the term "subsequent purchasers" emphasizing and construing the word "subsequent" and without taking into consideration the "good faith" feature of the statute; and we think that these cases support the conclusion as to the purpose of section 8267 that Judge Bourquin reached in the case of *Cullen* v. *Reed,* as well as the reasoning of this court in the *Chester State Bank Case.*

*Mr. Sterling M. Wood,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

In August, 1907, William Birely and wife executed and delivered to Thomas E. Goodwin their promissory note for $3,000, due three years after date with interest at seven per cent per annum, and to secure the payment thereof gave a mortgage upon lots 14 and 15, block 11, Westside Addition to Billings, which mortgage was duly recorded. In 1915 the property was sold to James M. Lapp, subject to the mortgage, and soon thereafter Lapp conveyed it to plaintiff subject to the mortgage. In 1920 plaintiff instituted this suit to quiet title, joining Goodwin and the Farmers and Traders' State Bank as defendants. Later the bank was eliminated. Goodwin died and the administratrix of his estate was substituted, and Birely and wife were brought in as additional defendants. By way of cross-complaint defendant Goodwin alleged the execution and delivery of the note and mortgage, nonpayment of the principal and nonpayment of interest after February 8, 1920, and prayed for a decree of foreclosure. In answer to the cross-

complaint plaintiff and the defendants Birely alleged that neither Goodwin, his personal representative, nor anyone else for him had filed the renewal affidavit required by section 8267, Revised Codes of 1921, and this was admitted to be true. The trial court rendered and had entered a decree quieting title in plaintiff and defendant Goodwin appealed.

·When plaintiff purchased the property from Lapp, the record [1] imparted notice of the Goodwin mortgage (sec. 6934, Rev. Codes) ; but in addition thereto she had actual notice conveyed by the recital in her deed. However she did not assume any personal liability for the debt. (*Lang* v. *Cadwell*, 13 Mont. 458, 34 Pac. 957.) So long as the mortgage continued to be a lien, the land was charged with the duty to pay the debt, and conversely, if the mortgage ceased to be a lien the land was freed of its burden. Whether the mortgage ceased to be a [2] lien upon the lots in question depends upon the proper construction of section 1, Chapter 27, Laws of 1913, now section 8267, Revised Codes of 1921. That section reads as follows:

. "Section 1. Every mortgage of real property made, acknowledged and recorded, as provided by the laws of this state, is thereupon good and valid as against the creditors of the mortgagor or owner of the land mortgaged, or subsequent purchasers or encumbrancers, from the time it is so recorded until eight years after the maturity of the entire debt or obligation secured thereby and no longer, unless the mortgagee, his heirs, executors, administrators, representatives, successors, or assigns, shall within sixty days after the expiration of said eight years file in the office of the county clerk and recorder where said mortgage is recorded, an affidavit, setting forth the date of said mortgage, when and where recorded, the amount of the debt secured thereby, and the amount remaining unpaid, and that the said mortgage is not renewed for the purpose of hindering, delaying or defrauding creditors of the mortgagor or owner of the land, and upon the filing of said affidavit, the said mortgage shall be valid against all persons for a further period of eight years."

The language is so plain, simple and direct that it would appear to construe itself; however, the United States court for the district of Montana, in *Cullen* v. *Reed* (D. C.), 220 Fed. 356, reached a different conclusion and held that the words "in good faith" are to be interpolated to qualify the terms "subsequent purchasers or encumbrancers." · This conclusion was reached by construing Chapter 27 as *in pari materia* with our Recording Acts. The like conclusion was reached by the supreme court of the United States in construing a somewhat similar statute in Louisiana, in *Patterson* v. *De La Ronda,* 8 Wall. 292, 19 L. Ed. 415 [see, also, Rose's U. S. Notes]. A different construction was placed upon the same statute by the supreme court of Louisiana, in *Shepherd* v. *Orleans Cotton Press Co.,* 2 La. Ann. 100, and in *Adams* v. *Daunis,* 29 La. Ann. 315. When the question again came before the supreme court of the United States, in *Pickett* v. *Foster,* 149 U. S. 505, 37 L. Ed. 829, 13 Sup. Ct. Rep. 998 [see, also, Rose's U. S. Notes], the construction of the Louisiana court was followed.

Bearing in mind that aside from making permanent the evidence of titles, the sole purpose of recordation laws is to impart notice, then if Chapter 27 was intended as a recording statute, or was intended to be construed with existing Recording Acts, the conclusion of the federal court might be justified. On the other hand, if by the enactment of Chapter 27 the legislature intended to fix a definite point of time beyond which a recorded mortgage ceases to be an enforceable lien upon real property, it is altogether immaterial whether the subsequent purchaser or encumbrancer became such with or without notice. In other words, if it was the intention of the legislature by this enactment to affect only the notice which the recorded mortgage imparts, the Act is a recording statute in effect, whatever may be its form. But if the intention was to affect the remedy by which a recorded mortgage may be enforced, then it is to all intents and purposes a statute of limitations even though it [3] may not in terms purport to be such. The intention of the legislature in enacting the statute is the consideration which

must control in its construction (sec. 10520, Rev. Codes 1921), and to ascertain that intention recourse must be had, first, to the language employed (*State* v. *Cudahy Packing Co.*, 33 Mont. 179, 114 Am. St. Rep. 804, 8 Ann. Cas. 717, 82 Pac. 833), indulging the presumption that the terms used were intended to be understood in their ordinary sense, unless it is made apparent from the context that they were intended to be given a different meaning (*State ex rel. Anaconda C. Min. Co.* v. *District Court*, 26 Mont. 396, 68 Pac. 570, 69 Pac. 103).

The statute declares explicitly that a mortgage on real property, duly recorded, is good and valid as against the persons mentioned for eight years and no longer, computing the period from the due date of the debt secured, unless the renewal affidavit is filed. While a better selection of words might have been made, each of the terms "good" and "valid" has a well-understood meaning. "Good" means "valid, sufficient in law." (Black's Law Dictionary.) "Valid" means "of binding force or legal sufficiency." (Bouvier's Law Dictionary.) In other words, according to the language employed in this Act, a mortgage on real property, duly recorded, ceases to be of binding force as against the persons mentioned and becomes unenforceable, by the lapse of eight years from the maturity of the debt or obligation secured, unless the renewal affidavit is filed. If, however, this interpretation of the language leaves any room for doubt as to the legislative intent, recourse may be had to the title of the Act, since the title is presumed to indicate the intention. (*State ex rel. Smith* v. *Duncan*, 55 Mont. 376, 177 Pac. 248.) The title is "An Act defining the duration of liens of mortgages upon real estate and the manner of the extension thereof." To "define" is "to fix the bounds of." (Webster's International Dictionary.) "Duration" means "the portion of time during which anything exists." (*Id.*) This title indicates beyond peradventure that it was the intention of the legislature to fix a definite and easily ascertainable point of time beyond which a recorded mortgage ceases to be of any force as

against the persons mentioned in the body of the Act, unless it is renewed within the time and in the manner provided.

A mortgage does not transfer any title to the property. [4] (Secs. 8224, 8229, Rev. Codes 1921.) It is merely a lien fixed upon the property to secure the performance of an act (sec. 8264; *Davidson* v. *Wampler,* 29 Mont. 61, 74 Pac. 82); hence it follows that whenever it ceases to be a lien, it ceases to be a mortgage (*Berkin* v. *Healy,* 52 Mont. 398, 158 Pac. 1020). Nowhere in either the title or body of the Act is there the slightest intimation, that the legislature intended merely to affect the notice which a recorded mortgage imparts (sec. 6934); on the contrary, both the title and the body of the Act indicate as clearly as language can convey ideas that it was the lien of the mortgage—hence the mortgage itself—which was to be affected, and it was to be affected in the same manner as it would have been if the Act had declared that no action shall be brought to foreclose a mortgage on real property unless commenced within eight years from the due date of the debt or obligation secured.

Prior to 1913 the rule was declared by statute that a lien was extinguished by the lapse of the time within which an action could be brought upon the debt secured. (Sec. 8243, Rev. Codes 1921.) That was clearly a statute of limitations and under it the moment the debt was barred, the mortgage securing it was absolutely stripped of its vitality; the mortgagee could not foreclose or assert any claim under it, and a subsequent purchaser of the land could maintain an action to have the mortgage canceled of record and the cloud removed from his title. (*Berkin* v. *Healy,* above.) However, under the statute then in force, the date when the mortgage ceased to be a lien was always in doubt. Payments upon or proper acknowledgment of the debt might prevent the statute of limitations running; hence the debt might be enforceable for an indefinite period of time and the mortgage lien extended accordingly. An intending purchaser was compelled to rely upon such information as he might be able to secure from the mortgagor

or the holder of the note in order to determine whether a recorded mortgage was or was not a subsisting lien, for the record furnished him no information whatever. By enacting Chapter 27 the period during which a recorded mortgage is enforceable is made definite and certain, and the record itself, which is open to inspection by everyone interested, is constituted the final arbiter for determining whether an enforceable lien exists or does not.

In *Cullen* v. *Reed* the court also referred to the provisions of the statute which authorize the extension of a chattel mortgage, now found in section 8280, Revised Codes of 1921, and observed that Chapter 27 was apparently intended to accomplish the same purpose with respect to mortgages on real property. In our opinion, the history of the chattel mortgage law demonstrates that an analogy between the two Acts cannot be drawn. In this jurisdiction, prior to 1881, chattel mortgages were recorded, not merely filed, and no provision was made for extending them. (Sec. 201, Fifth Div., Rev. Stats. 1879.) The purpose of the record was to impart notice, and at the expiration of one year from the date of recording the mortgage ceased to have any effect whatever. In 1881, provision was made for filing a chattel mortgage instead of recording it, but the purpose of the Act was to impart notice, as the record theretofore had done. (Laws 1881, p. 3.) In 1887 the statute was amended so that the mortgage was made to continue in force for one year and sixty days, and for the first time provision was made for extending the mortgage. (Secs. 1541–1545, Fifth Div., Comp. Stats. 1887.) At that time, in the jurisdictions where provision was made for extending a chattel mortgage, the object was attained generally by refiling the original mortgage. As the purpose of filing in the first instance was to impart notice, so the refiling was intended for the same purpose. Instead of providing for refiling, our legislature declared the extension should be made by filing an affidavit, but the purpose to be served was precisely the same. (*First Nat. Bank* v. *Beley,* 32 Mont. 291, 80 Pac. 256.) Since the purpose

of refiling in other jurisdictions, and filing the affidavit in the territory, was to impart notice, the only effect of a failure to do the one or the other was to render the chattel mortgage invalid as against subsequent purchasers or mortgagees in good faith, or creditors who thereafter acquired liens upon the property. The refiling in the one instance, or filing the affidavit in the other, was for the protection of creditors, and *bona fide* purchasers and encumbrancers without notice. (Jones on Chattel Mortgages, sec. 292.) That this has been the policy of the law in this state since 1895, at least, is fairly demonstrable. Section 3861, Civil Code of 1895, provided: "A mortgage of personal property is void as against creditors of the mortgagor, and subsequent purchasers and encumbrancers of the property in good faith for value," unless possession be taken and retained by the mortgagee or the mortgage be duly executed and filed. Possession in the mortgagee would impart notice to those entitled to notice, and the filing was intended to accomplish the same end. That statute, or its equivalent in effect, has been in force continuously since 1895. (Sec. 5762, Rev. Codes 1907; sec. 5, Chap. 86, Laws 1913; Chap. 152, Laws 1919; sec. 8279, Rev. Codes 1921.) From its introduction into our statute law the provision for extending a chattel mortgage has always been a part of the Act which provided for filing a chattel mortgage, and since it was a part of the same Act and dealing with the same subject, it was to be construed with the former. With amendments which are not material here, the Act of 1887 has been brought forward to the present time. In *Chester State Bank* v. *Minneapolis Threshing Mach. Co.*, 58 Mont. 44, 190 Pac. 136, reference was made to the statute as it existed in 1907, and to the amendatory Act of 1913, but only for the purpose of showing what the policy of the law had been and continued to be as indicated above.

While the provision for extending a chattel mortgage was made a part of the chattel mortgage law, Chapter 27 above, which limits the duration of a lien of a recorded mortgage upon real property, does not purport to be a part of the gen-

eral recording statutes or *in pari materia* with them. In our opinion, the meaning of its language is too plain to admit of [5] doubt and we are not justified in writing into the Act words which the legislature saw fit to omit. We are admonished by section 10519, Revised Codes, that in construing a statute the office of the court "is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted."

Our conclusion is that Chapter 27 is in effect a statute of limitations operating as an amendment of section 8243, Revised Codes; that the Goodwin mortgage ceased to be a lien upon the property in question upon the expiration of eight years from the due date of the note, or in 1918, and that the judgment of the trial court is correct.

Under the interpretation which we have adopted, the question [6] of the constitutionality of the Act, suggested by counsel for appellant cannot arise. (*Guiterman* v. *Wishon*, 21 Mont. 458, 54 Pac. 566; *Colbert's Estate*, 44 Mont. 259, 119 Pac. 791; *Koshkonong* v. *Burton*, 104 U. S. 668, 26 L. Ed. 886 [see, also, Rose's U. S. Notes].)

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES COOPER, GALEN and STARK concur.

Rehearing denied April 10, 1924.