## O. M. CORWIN CO., APPELLANT, v. BRAINARD ET AL., DEFENDANTS; VAN DYKEN, RESPONDENT.

(No. 6,169.)

(Submitted September 26, 1927.   Decided October 27, 1927.)

[260 Pac. 706.]

*Real Estate Mortgages — Extension — Effect on Subsequent Mortgage.*

Real Estate Mortgages—Extension by Agreement of Parties—Statute.
1.  Section 8264, Revised Codes 1921, providing, inter alia, for the extension of a mortgage with the formalities required in the case of a grant of real property, contemplates the making of a contract assented to by both parties, and in order that notice of the extension may be given to subsequent purchasers and mortgagees, the instrument must be filed with the county clerk for record.

Same—Extension by Filing of Affidavit by Mortgagee—Effect.
2.  Section 8267, Revised Codes 1921, declaring the life of a mortgage on real property at an end at the close of eight years after maturity of the entire debt secured thereby, unless the mortgagee or his successors or assigns shall within sixty days after the expiration of the eight years file the affidavit of renewal therein described, contemplates action by the mortgagee alone, and after he shall have extended the life of his mortgage lien by taking the steps prescribed, he may foreclose the mortgage at his pleasure; as between him and the mortgagor, if the debt be kept alive, the mortgage is good even after the expiration of eight years from the maturity of the debt.

Same—Method of Extension by Affidavit Filed by Mortgagee not Exclusive.
3.  *Held,* that the method prescribed by section 8267, supra, for extending the life of a real estate mortgage by the filing of an affidavit by the mortgagee is not exclusive, but that under section 8264 an extension may be effected by agreement between the parties to the mortgage by pursuing the formalities required in the case of a grant of real property.

Same—Effect of Extension by Agreement of Parties Before Rights of Third Parties Intervened, on Subsequent Mortgage.
4.  Where by agreement between the parties to a real estate mortgage before maturity of the debt to secure which it had been given and before rights of third parties had intervened, the payment of the debt as well as the mortgage were extended for several years, under section 8264, above, the instrument being placed of record, a mortgage given on the property after filing of the extension agreement was inferior to the former.

---

[1-4]  Mortgages, 41 C. J., sec. 545, p. 582, n. 91; sec. 885, p. 785, n. 16 New; sec. 952, p. 809, n. 22, 25.

*Appeal from District Court, Gallatin County; B. B. Law, Judge.*

ACTION by the O. M. Corwin Company against William D. Brainard and others. From a judgment for Mrs. Anna Van Dyken, decreeing her mortgage to be a first mortgage on premises, plaintiff appeals. Reversed, with directions to render judgment to conform to opinion.

*Messrs. Maddox & Church,* for Appellant, submitted a brief; *Mr. Fletcher Maddox* argued the cause orally.

*Mr. Walter Aitken,* for Respondent, submitted a brief and argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

William D. Brainard and Laura M. Brainard, his wife, on the 9th of August, 1913, executed to Wells and Dickey Company, a North Dakota corporation, a promissory note for $8,000, payable August 15, 1918, with interest payable annually thereon at the rate of six per cent from August 15, 1913, until maturity, according to the tenor of six interest notes attached to the principal note. It was provided that the principal note should bear interest at twelve per cent per annum after maturity. To secure the payment of the note and interest the makers executed to the payee a mortgage upon land in Gallatin county this state.

On August 7, 1918, Mr. and Mrs. Brainard executed two other instruments. One to Wells and Dickey Company, referred to hereafter as the extension agreement, wherein they recited the fact that they had executed to that corporation the note and mortgage above mentioned, and that at their request the time of the payment of the note had been extended to December 1, 1923, with the privilege of paying $500 or any multiple thereof on any interest payment date, upon thirty

days' notice. In consideration whereof they agreed with "the holders of said mortgage, their representatives, successors and assigns," to pay interest on the note from August 15, 1918, until the principal sum should be due, "at the rate of six per cent per annum, and twelve per cent per annum after maturity until fully paid, payable annually, according to the spirit and tenor of six interest notes of even date herewith, executed by the undersigned." They further agreed that all the covenants, stipulations and agreements of the note and of the mortgage given to secure the same "shall be and remain in full force and effect," and further that if any of the covenants, stipulations or agreements in said mortgage contained be broken or violated, or default be made in the payment of any extension interest notes when they should become due, then the holders of the mortgage, their representatives, successors or assigns, might at their option and without notice declare the extension at an end and proceed to collect the debt and foreclose the mortgage under the power of sale contained therein. The other was a mortgage to Wells-Dickey Company, a Minnesota corporation, designed to the secure the payment of six promissory notes, one for $58.88, payable December 1, 1918, and five for $200 each, payable on the first day of December of the years 1919, 1920, 1921, 1922 and 1923. This was a "commission" mortgage; the notes mentioned amounted to two and one-half per cent on $8,000 for the period of time between August 15, 1918, and December 1, 1923.

On December 1, 1919, William D. Brainard and Laura M. Brainard executed to Belgrade State Bank a note for $4,000, due in one year from date, and a mortgage upon the land mentioned above, to secure payment of the same. Anna Van Dyken became the owner of that mortgage.

The several mortgages and extension agreement were duly recorded. The interest notes referred to in the extension agreement were paid; ·in fact, interest was paid upon the $8,000 note to December 1, 1924. All of the notes referred

[80 Mont. 318.]

to in the Wells-Dickey mortgage were paid at maturity and that mortgage satisfied,—in fact, though not of record.

On April 20, 1926, Wells and Dickey Company sold and assigned to the plaintiff the $8,000 note and mortgage. On August 26, 1926, the plaintiff commenced this action against William D. Brainard, Laura M. Brainard and others for the purpose of foreclosing its mortgage. The plaintiff prayed for judgment against the mortgagors in the sum of $8,000, together with interest thereon at twelve per cent from December 1, 1924, and for the relief usual in such cases. All of the defendants, save Anna Van Dyken, referred to hereafter as the defendant, made default. She filed an answer and cross-complaint. As an affirmative defense to the plaintiff's cause of action, she pleaded that the lien of plaintiff's mortgage expired on August 15, 1926, for the reason that the plaintiff did not, nor did anyone for it, within sixty days after the 15th of August, 1926, file in the office of the county clerk of Gallatin county, an affidavit pursuant to the provisions of section 8267, Revised Codes 1921. By way of cross-complaint she alleged herself to be the owner of the mortgage executed by the Brainards to the Belgrade State Bank on December 1, 1919, and asked its foreclosure. Plaintiff admitted that it did not, neither did anyone for it, file the affidavit contemplated by section 8267. Otherwise it denied the affirmative matter stated in the defendant's affirmative defense, and also made appropriate denials to the cross-complaint.

In due time the cause came on for trial before the court sitting without a jury. After consideration the court determined that the lien of plaintiff's mortgage had expired, as asserted by the defendant Van Dyken; that the mortgage dated August 7, 1918, from the Brainards to Wells-Dickey Company had been paid; that the mortgage given by the Brainards to Belgrade State Bank, at the time of the trial owned by the defendant, was a first mortgage upon the premises therein described, and gave the defendant judgment for its foreclosure. The plaintiff has appealed from the judgment.

The question for decision is whether the lien of plaintiff's
[1-4] mortgage expired on August 15, 1926.

Counsel for plaintiff rely upon section 8264, Revised Codes
1921, which provides that a "mortgage of real property can
be created, renewed or extended, only by writing with the
formalities required in the case of a grant of real property,"
while counsel for defendant relies upon the provisions of sec-
tion 8267, Revised Codes 1921, which declares that every mort-
gage of real property made, acknowledged, and recorded, as
provided by the laws of this state is thereupon good and valid
as against the creditors of the mortgagor or owner of the
land mortgaged, or subsequent purchasers or encumbrancers,
from the time it is so recorded until eight years after the
maturity of the entire debt or obligation secured thereby, and
no longer, unless the mortgagee, his heirs, executors, adminis-
trators, representatives, successors or assigns, shall, within
sixty days after the expiration of said eight years file in the
office of the county clerk and recorder where said mortgage
is recorded, an affidavit, setting forth the date of said mort-
gage, when and where recorded, the amount of the debt secured
thereby, and the amount remaining unpaid, and that the mort-
gage is not renewed for the purpose of hindering, delaying
or defrauding creditors of the mortgagor or owner of the
land, and upon the filing of the affidavit, the mortgage shall
be valid against all persons for a further period of eight
years.

The trial court deemed section 8267 controlling, evidently
relying upon *Morrison* v. *Farmers & Traders' State Bank*,
70 Mont. 146, 225 Pac. 123. In that case Birely and wife
mortgaged real property to Goodwin. The note secured by
the mortgage was due in 1910. In 1915 the Birelys sold
the property subject to the mortgage to one Lapp, who there-
after likewise sold it to Morrison. In 1920 Morrison insti-
tuted a suit to quiet title to the land, making the Farmers
& Traders' State Bank and Goodwin defendants. Goodwin
by cross-complaint set up his note and mortgage, asking judg-

ment upon the note and foreclosure of the mortgage. Neither the mortgagors nor the mortgagee had ever attempted to renew or extend the mortgage. It was held that the lien of the Goodwin mortgage had expired in 1918, eight years after the maturity of the note, under the express provisions of section 8267. In the decision it was pointed out that prior to the enactment of Chapter 27 of the Laws of 1913 (now sec. 8267, Rev. Codes 1921) the rule was declared by statute that a lien was extinguished by the lapse of time within which an action could be brought upon the debt secured. (Sec. 8243, Rev. Codes 1921.) The mischief flowing from the operation of the statute and the reason for the enactment of Chapter 27 were commented upon. The court said that under the provisions of section 8243 "the date when the mortgage ceased to be a lien was always in doubt. Payments upon or proper acknowledgment of the debt might prevent the statute of limitations running; hence the debt might be enforceable for an indefinite period of time and the mortgage lien extended accordingly. An intending purchaser was compelled to rely upon such information as he might be able to secure from the mortgagor or holder of the note in order to determine whether a recorded mortgage was or was not a subsisting lien, for the record furnished him no information whatever. By enacting Chapter 27 the period during which a recorded mortgage is enforceable is made definite and certain, and the record itself, which is open to inspection by everyone interested, is constituted the final arbiter for determining whether an enforceable lien exists or does not." The court declared that Chapter 27 is in effect a statute of limitations operating as an amendment of section 8243. Commenting upon the meaning and intent of Chapter 27 with reference to the title of the Act, the court said: "This title indicated beyond peradventure that it was the intention of the legislature to fix a definite and easily ascertainable point of time beyond which a recorded mortgage ceases to be of any force as against the persons

mentioned in the body of the Act unless it is renewed within the time and in the manner provided."

As applied to the facts in the *Morrison Case,* or to a similar state of facts, the foregoing comment indubitably is correct.

Here we have a different state of facts, but before discussing them we must consider the two statutes relied upon by opposing counsel. Section 8264 was not in contemplation in the *Morrison Case.* We must, as far as possible, harmonize this section with section 8267.

Section 8264 contemplates joint action by the mortgagor and mortgagee: the creation, renewal or extension of a mortgage by writing with the formalities required in the case of a grant of real property; it contemplates the making of a contract assented to by the parties: the delivery by the mortgagor to the mortgagee of the mortgage, or renewal or extension. In order that notice of the existence of the mortgage, or renewal, or extension may be given to subsequent purchasers and mortgagees, the instrument must be filed with the county clerk for record. (Sec. 6934, Rev. Codes 1921.)

Section 8267 contemplates action by the mortgagee alone after the maturity of the debt or obligation secured by the mortgage. In order to keep alive the lien of his mortgage the mortgagee must comply with the statute within the time and in the manner provided. With that action the mortgagor has nothing to do; he cannot prevent it, neither can he bring it to pass. After the mortgagee shall have extended his mortgage pursuant to the statute he may foreclose it at pleasure. Section 8267 has reference only to the extension of the lien of the mortgage. As between the mortgagor and mortgagee, if the debt be kept alive, the mortgage is good even after the expiration of eight years from the maturity of the note or obligation.

A renewal or extension under the provisions of section 8264 binds the mortgagor and mortgagee in accordance with the terms agreed upon. In the case at bar, if the renewal agreed upon by the mortgagors and the mortgagee be held valid, the extension from August 15, 1918, to December 1,

1923, was a definite period during which, the mortgagors complying with its terms, the mortgagee could not foreclose the mortgage. This was a definite advantage to the mortgagors.

The conditions under which a mortgage may be renewed or extended, pursuant to section 8264, and the effect of such renewal or extension, where the rights, then existing, of third persons are affected, need not be considered, as will presently appear; but we do not perceive any good reason to prevent the renewal or extension of a mortgage by joint act of the parties, where the effect of the renewal or extension would not be different than if the parties executed a wholly new mortgage. That is to say, if the same result would follow from the creation of a new mortgage there would not seem to be any reason why the parties may not renew or extend the debt or obligation and the mortgage securing the same, under section 8264. That a mortgagor and mortgagee may renew or extend a mortgage when there are neither creditors of the mortgagor nor subsequent purchasers or encumbrancers of the land to be affected, is too plain to require comment. The renewal or extension being placed of record, showing the maturity of the debt or obligation, does not come within the mischief sought to be remedied by the enactment of section 8267. Can it be possible that the legislature by enacting section 8267 intended to prevent a mortgagor, no third person being affected, from procuring a renewal of the mortgage, an extension of the time of payment by agreement with the mortgagee? Or is he required to give a new note or notes and a new mortgage in order to forfend the menace of a foreclosure? Surely the legislature intended no such thing.

Now to the facts. The only parties concerned in this litigation are the plaintiff and the defendant. When the agreement between the mortgagors and the mortgagee was made on August 7, 1918, before maturity of the debt, whereby the payment of the debt—the note for $8,000—was extended

to December 1, 1923, and it was provided that the mortgage given to secure the payment of that note should remain in full force and effect, the mortgage of the defendant was not in existence. Under the terms of the extension agreement the note and mortgage were extended for a period of five years, three and one-half months.

When the defendant's predecessor in interest, the Belgrade State Bank, loaned the Brainards $4,000 on December 1, 1919, and took a mortgage expressly made second to plaintiff's, the extension agreement of August 7, 1918, was of record, imparting to the world notice of its contents and of the fact that the debt would not mature until December 1, 1923. The Belgrade State Bank took this second mortgage with full knowledge of the facts.

As the debt secured by plaintiff's mortgage did not come to maturity until December 1, 1923, the lien of plaintiff's mortgage was in full force when this suit was commenced on August 26, 1926. The plaintiff is entitled to judgment accordingly. The mortgage of the defendant is subject to that of the plaintiff.

The judgment is reversed, with directions to the district court to render judgment in conformity with this opinion.

*Reversed.*

ASSOCIATE JUSTICES MYERS, STARK, MATTHEWS and GALEN concur.

---

## OPINION ON MOTION FOR REHEARING.

(Decided November 14, 1927.)

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

Defendant has moved for a rehearing, the principal ground of which is that in *Morrison* v. *Farmers & Traders' State*

*Bank,* supra, in discussing the purpose and meaning of section 8267, Revised Codes 1921, this court said that Chapter 27 of the Laws of 1913 was not to be construed in pari materia with the Recording Acts, and that if by the enactment of that chapter the legislature intended—as it did—"to fix a definite point of time beyond which a recorded mortgage ceased to be an enforceable lien upon real property it is altogether immaterial whether the subsequent purchaser or encumbrancer becomes such without notice," while in the foregoing opinion we call attention to the fact that the subsequent mortgagee took its mortgage with full knowledge of the facts.

Defendant's earnest and able counsel urges us to explain, or to reconcile, what he terms a conflict in the two opinions. While doubting any necessity for that action we shall add a few words. We think counsel overlooks the wide distinction between the two cases, which are not inharmonious.

The decision in this case does not turn upon notice; that is only incidental. The question is whether a mortgagor and mortgagee may under section 8264 renew or extend a mortgage, the rights of others being unaffected thereby, or whether the only possible way of extending a mortgage is by the action of the mortgagee alone under section 8267.

Upon a state of facts such as was presented in the *Morrison Case,* where under section 8267 the mortgagee alone can act, and then only after the maturity of the debt or obligation secured by the mortgage, and regardless of the mortgagor or anyone else, notice is wholly immaterial; the reasons which called this legislation into existence are set forth in the *Morrison Case* and are adverted to in the foregoing opinion. It is pointed out that section 8267 in effect is a statute of limitations. That statute has no reference whatever to a renewal or extension of an existing mortgage by joint act of the parties where the rights of third parties are not affected. In this situation, of course, the extension or renewal must be placed of record so that third parties may have notice, for

the same reason that the original mortgage is placed of record. The motion for rehearing is denied.

*Rehearing denied.*

ASSOCIATE JUSTICES MYERS, STARK, MATTHEWS and GALEN concur.