HASTINGS et al., Respondents, v. WISE et al., Appellants.

(No. 6,732.)

(Submitted January 16, 1931. Decided March 12, 1931.)

[297 Pac. 482.]

*Mr. Merle C. Groene,* for Appellants, submitted an original and a reply brief and argued the cause orally.

328

329

*Mr. Wm. M. Blackford* and *Messrs. Murphy & Whitlock,* for Respondents, submitted a brief; *Mr. A. N. Whitlock* argued the cause orally.

MR. JUSTICE GALEN delivered the opinion of the court.

This action was instituted on September 11, 1929, by Alice O. Hastings et al. against Milton R. Wise and Edna W. Keller, to foreclose twenty-one separate real estate mortgages. A receiver was appointed *pendente lite,* and the cause is now before us on appeal from the order appointing the receiver.

The only question presented by the defendants' assignments of error is whether the court erred in making the appointment.

The petition for the appointment was based upon three principal grounds, viz.: (1) that the rents and profits are pledged in the mortgages; (2) that the conditions of the mortgages have not been performed; and (3) that the mortgaged property is insufficient to discharge the mortgage debt. Each of the mortgages contains the following provision: "It is agreed that if the mortgagor or maker or makers of the obligation secured by this indenture shall fail to pay the principal or any interest as the same become due, or any taxes, assessments or insurance as required, or otherwise fail to comply with any one or all of the conditions of this mortgage, then all of said debt secured hereby shall become due and collectible and all rents and profits of said property shall then immediately accrue to the benefit of the said mortgagee."

1. Our statute specifically authorizes the appointment of ▮▮▮▮ · a receiver in mortgage foreclosure proceedings when it appears "that the condition of the mortgage has not been performed, and that the property is probably insufficient to discharge the mortgage debt." (Sec. 9301, Rev. Codes 1921.) And the word "property" as employed in the statute is defined to include "rents, profits, or other income, and the increase of real or personal property." (Id. 9302.) Showing within the statute was attempted to be made by the plaintiffs in their verified petition for the appointment of a receiver, whereby it is made to appear that the conditions of the mortgage have not been performed, in that the principal of the notes amounting to the sum of $30,944.30, became due and payable on April 1, 1929, and that no part of the principal sum has been paid; that interest was due and payable annually on the indebtedness at the rate of seven per cent, yet no interest has been paid on the notes representing the indebtedness since April 1, 1926, and that the principal indebtedness plus interest past due amounted to the sum of $40,114; and further that the defendants have allowed the taxes to become delinquent for the year 1929, and that the same, with penalty and interest due thereon, amounted to the

sum of $1,922.55; that the mortgaged lands are insufficient security for the payment of the debt remaining unpaid, taxes and costs and expenses of this foreclosure action; it being alleged that the property which comprises 2,045 acres is not worth to exceed $12.50 per acre, or a total of $25,562.50, whereas the indebtedness amounted to more than $40,000. Affidavits were attached to the petition by real estate men who are familiar with the land and land values in the vicinity, to the effect that the lands involved "taken as a whole are not worth to exceed $12.50 per acre" or a total of $25,562.50.

We need go no further than the statute (sec. 9301), and the decisions of this court, in justification of the court in making the order appointing a receiver in this case, if the mortgages remained unaffected by the bar of the statute of limitations (sec. 8267, Rev. Codes 1921), a subject which will later be given consideration.

In the case of *Long* v. *Devereaux Co.*, 87 Mont. 198, 286 Pac. 402, 405, this court had before it a clause identical with those contained in the mortgages now before us, and it was held that while the mortgage did not create a lien on the rents, issues and profits, "the prevailing rule is that if a mortgagee desires to avail himself of the right to rents and profits pledged by a mortgage upon real estate without the right of immediate possession of the land, he must claim them by invoking the aid of a court of equity for the appointment of a receiver to take possession of the rents and profits. This right is conferred by section 9301, Revised Codes of 1921."

"Rents and profits are as much property as the estate out of which they arise, and as such are equally the subject of a mortgage." (41 C. J. 375.) The mortgagors, even after default, and although the rents and profits were mortgaged, could remain in possession of the lands and collect the rents and dissipate them, and the mortgagees would be powerless to prevent it, unless a receiver was appointed to collect and impound the rents pending foreclosure. And where, as here, the rents and profits together with the lands are pledged for the payment of the debt, then upon default in payment and

foreclosure, the rents and profits are, as is the land, primarily liable for the payment of the debt. The contract of the parties governs, and it is a matter of indifference that the mortgagor may be solvent. It is a lawful contract which the courts will enforce in extinguishment of the indebtedness.

The editor of a very exhaustive note in 4 A. L. R., page 1416, dealing with the subject, states the rule applicable in accordance with our views, as follows: "Where the parties have expressly contracted for a lien upon the rents and profits, there seems to be no valid reason for depriving the mortgagee thereof because of the fact that the mortgagor is solvent, and the debt may be collected by execution on other property of the mortgagor. Nor should the conditions that there must be danger of loss, waste, destruction, or serious impairment of the property, sometimes prescribed as conditions precedent to the appointment of a receiver, be regarded as material where there is such a stipulation."

In foreclosure proceedings where, as here, it appears that the mortgage contains a stipulation pledging the rents and profits, and that it is reasonably necessary to impound the rents and profits in order to protect and secure the enforcement of the mortgage debt, an application for the appointment of a receiver should ordinarily be granted, regardless of the solvency or insolvency of the mortgagor unless the latter is able to satisfy the court that the mortgaged property, exclusive of rents and profits, is ample security for the payment of the debt.

Unless the right of possession is given to the mortgagee by the terms of the mortgage, there is no way whereby to make the pledge of the rents, issues and profits effective, save and except by invoking the aid of a court of equity for the appointment of a receiver, as was done in the case before us. Here the showing made clearly indicates the probable loss of the rents and profits if a receiver were not appointed, and that the rents and profits were pledged by the terms of the mortgage contract, which could only be made effective by

taking possession, and since the mortgage did not authorize the mortgagee to take possession, it could only be accomplished by the appointment of a receiver.

2. But it is contended that the court abused its discretion in appointing a receiver because it appears from the pleadings that no affidavit of renewal of the mortgages was made and filed within eight years and sixty days from the maturity of the entire debt, as provided by section 8267 of the Revised Codes of 1921.

It appears that all of the mortgages were executed April 1, 1909, to William O. Straw, were recorded April 14, 1909, and that the date of the maturity of the indebtedness was April 1, 1919. The mortgages were executed by Cook-Reynolds Company, who were then the owners of the property; later, on or about September 1, 1910, the Cook-Reynolds Company sold the lands to the defendant, Milton R. Wise, subject to the mortgages, who in turn, on February 25, 1927, conveyed the lands by warranty deed to the defendant Edna W. Keller, subject to existing mortgages and liens of record, which deed was not placed of record until September 9, 1929. After the execution and delivery of the notes and the mortgages securing the same, William O. Straw, by an instrument in writing, duly acknowledged and certified so as to entitle it to record, transferred and assigned the promissory notes and the mortgages securing the same to Agnes H. Straw, which was thereafter duly placed of record and recorded on the nineteenth day of May, 1909. On January 13, 1919, Agnes Straw entered into an extension agreement with the defendant Milton R. Wise, wherein and whereby the maturity of the indebtedness was extended for a period of ten years from April 1, 1919, in which, among other things, it is recited: "It is hereby specifically understood and agreed that nothing herein contained shall be construed to impair the security of the said party of the first part, her executors, administrators or assigns under said mortgages, nor affect nor impair any rights or powers which she may have under the said notes and mortgages for

the recovery of the mortgage debt with interest, in case of nonfulfillment of this agreement by said party of the second part, and it is further agreed and understood that this instrument is for the purpose of avoiding the necessity of a renewal of said respective mortgages and shall operate and have the effect of the execution and delivery of new mortgages securing said respective sums of money.''

This instrument was executed a little more than two and one-half months before the original maturity of the debt, and by its terms the maturity of the indebtedness was extended to April 1, 1929. However, it was not placed of record until July 22, 1929, nearly four months after the maturity of the debt as extended, and more than ten years after April 1, 1919, the original date of maturity of the indebtedness, although more than a month before the deed from Wise to Keller was placed of record (Sept. 9, 1929). However, it is alleged that the defendant Keller had actual notice of the agreement extending the time of payment of the mortgage indebtedness, and if not, that she was chargeable with notice by reason of the recitals in the deed from Wise conveying the property to her.

It is the contention of the defendants that the mortgages were barred by the provisions of section 8267 of the Revised Codes of 1921. So far as applicable that section reads: ''Every mortgage of real property made, acknowledged, and recorded, as provided by the laws of this state, is thereupon good and valid as against the creditors of the mortgagor or owner of the land mortgaged, or subsequent purchasers or encumbrancers, from the time it is so recorded until eight years after the maturity of the entire debt or obligation secured thereby, and no longer, unless the mortgagee, his heirs, executors, administrators, representatives, successors, or assigns shall, within sixty days after the expiration of said eight years, file in the office of the county clerk and recorder where said mortgage is recorded, an affidavit, setting forth the date of said mortgage, when and where recorded, the amount of the debt secured thereby, and the amount remain-

ing unpaid, and that the said mortgage is not renewed for the purpose of hindering, delaying, or defrauding creditors of the mortgagor or owner of the land, and upon the filing of said affidavit, the said mortgage shall be valid against all persons for a further period of eight years."

It is urged by the defendant that although the defendant Keller had notice of the existence of the mortgages by reason of the recitals of the deed of the property to her by Wise, yet the mortgages expired eight years and sixty days after the first day of April, 1919, under the provisions of the statute, since no affidavit of renewal was filed by the mortgagees within the time prescribed, and her title was wholly unaffected by the mortgages. Under the decision of this court in the case of *Morrison* v. *Farmers' State Bank,* 70 Mont. 146, 225 Pac. 123, there is merit in this line of reasoning, but what was the effect, if any, of the execution of the agreement of January 13, 1919, extending the maturity of the indebtedness until April 1, 1929?

Section 8264 provides that "a mortgage of real property can be created, *renewed, or extended,* only by writing, with the formalities required in the case of a grant of real property." There is no requirement that the instrument be recorded. Under this statute an extension of the mortgage security is not effected by a mere payment on account of the secured indebtedness, after the bar of the statute. (*Berkin* v. *Healy,* 52 Mont. 398, 158 Pac. 1020.) But in the case before us, like that of *O. M. Corwin Co.* v. *Brainard,* 80 Mont. 318, 260 Pac. 706, 708, we have an instrument in writing, extending the time of payment, by the owner and holder of the mortgage debt with Wise, who then held legal title to the mortgaged property, with all of the formalities required for a grant of real property fully complying with the provisions of the last quoted statute. Had the instrument been placed of record, no question could now arise respecting the rights of the holders of the mortgages. It was entered into long prior to the deed of the property by Wise to Keller, and was unquestionably binding as to Wise. In the case of *O. M. Cor-*

*win Co.* v. *Brainard,* supra, considering the effect of section 8264, this court speaking through Mr. Chief Justice Callaway said, and we think correctly: "We do not perceive any good reason to prevent the renewal or extension of a mortgage by joint act of the parties, where the effect of the renewal or extension would not be different than if the parties executed a wholly new mortgage. That is to say, if the same result would follow from the creation of a new mortgage there would not seem to be any reason why the parties may not renew or extend the debt or obligation and the mortgage securing the same, under section 8264. That a mortgagor and mortgagee may renew or extend a mortgage when there are neither creditors of the mortgagor nor subsequent purchasers or encumbrancers of the land to be affected, is too plain to require comment. The renewal or extension being placed of record, showing the maturity of the debt or obligation, does not come within the mischief sought to be remedied by the enactment of section 8267. Can it be possible that the legislature by the enactment of section 8267 intended to prevent a mortgagor, no third person being affected, from procuring a renewal of the mortgage, an extension of the time of payment by agreement with the mortgagee? Or is he required to give a new note or notes and a new mortgage in order to forfend the menace of a foreclosure? Surely the legislature intended no such thing." (See, also, *Vitt* v. *Rogers,* 81 Mont. 120, 262 Pac. 164.)

When the defendant Keller received deed for the property, she took it chargeable with knowledge of the existence of the mortgages and that they might be extended by a compliance with the provisions of either section 8267 or 8264. The agreement of extension was made in time to protect the rights of the mortgagees, extending the maturity of the debt, as it did, until April 1, 1929; but it was not placed of record until July 22, 1929, more than two years after the mortgages would have been barred under section 8267, for failure of the mortgagees to protect their rights by filing within the time limit the affidavit prescribed, although in fact placed of record

more than a month before the deed to Keller. But whether the record notice of the extension agreement was legally sufficient to apprise her, we need not pause to determine, by reason of the allegations of the plaintiff's complaint to the effect that she had actual notice of such agreement. (Secs. 6938 and 8781, Rev. Codes 1921.) We recognize the general rule that ▮ a receiver will not be appointed in a mortgage foreclosure action, unless it is probable that the mortgagee will succeed in his action (note, 26 A. L. R., p. 36; Clark on Receivers, 2d ed., sec. 50); but here the showing is sufficient to justify the conclusion that the mortgagee will succeed. "The right of a court of equity to appoint a receiver in a proper case is inherent. It is one of the prerogatives of the court exercised in aid of its jurisdiction." (*State* v. *Yegen*, 79 Mont. 184, 255 Pac. 744, 747.)

The record on appeal in this case sets forth at length the ▮ entire complaint with the exhibits, consisting of a repetition of one cause of action after another until the twenty-one separate causes of action are stated for the foreclosure of as many real estate mortgages, and comprises 314 pages. The parties are the same in each cause of action which, in each instance, is for foreclosure of a mortgage in ordinary form; the only change being with respect to the description of tracts of land mortgaged and the amount of the mortgaged debt. The transcript is unnecessarily long and repetitious, and for the most part serves no useful purpose on this appeal. Our rules provide that "no paper shall be printed or written in the transcript more than once. Instead of repetition, appropriate reference may be made." And a strict compliance with these "requirements will be exacted in all cases, whether objection be made by the opposite party or not; and for any violation or neglect in these respects which is found to obstruct the examination of records, the appeal may be dismissed, or the court may order the offending party to pay the costs of such transcript, or any part thereof, unless the matter objected to is inserted by order

of the court or judge below." (Subds. 5d and 6, Rule VII, 87 Mont. xxiv.) Here, it appears that the plaintiffs, who are the respondents on this appeal, were the offending parties in unnecessarily encumbering the record, and for that reason they are hereby assessed with two-thirds of the cost of the transcript.

From the record before us, it cannot be said that the court abused its discretion in appointing a receiver, and therefore the order is affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES FORD, ANGSTMAN and MATTHEWS concur.

Rehearing denied March 26, 1931.