**6 P.(2d) 468**

**MANN v. WHITELY et al.**

No. 3665.

Supreme Court of New Mexico.

Dec. 11, 1931.

Charles F. Fishback, of Fort Sumner, for appellants.

K. W. Edwards, of Fort Sumner, and Carl A. Hatch, of Clovis, for appellee.

SADLER, J.

The decree from which this appeal is prosecuted foreclosed a mortgage against certain lands in De Baca county. The mortgage was given to secure a series of five notes in the sum of $1,243.12 each, maturing one, two, three, four, and five years after date, respectively. The original mortgagors, makers of the notes, were not joined as defendants. The appellants Whitely were made parties defendant under an allegation of occupancy by them of the premises in question by virtue of a purported contract of purchase from one W. O. Dunlap. He, Dunlap, was joined as a defendant under an allegation that he claimed ownership of the premises. Deficiency judgment was not asked against any of the defendants.

The complaint alleged facts upon the basis of which a receiver pendente lite was appointed, and, after hearing on bill and answer on order to show cause, retained for the period of the foreclosure. The mortgage purported to cover the rents, issues, and profits of the lands described. Inadequacy of security, dilapidated and run down condition of improvements, and presence on the premises of an apple orchard from which appellants White-

ly, as alleged, were harvesting the apple crop, and, unless restrained, would continue so to do and divert the proceeds of sale thereof from the mortgage indebtedness, in the face of an impaired security, are among the grounds urged in the complaint, as warranting receivership incident to the foreclosure. William M. Bartlett, as the asserted holder of a chattel mortgage on the apple crop, was also made a party defendant.

The defendant Bartlett disclaimed, Dunlap answered admitting all of the allegations of the complaint, while the appellants Whitely joined issue with appellants on the material allegations thereof. They also set up certain affirmative defenses, including their rights under the contract for the purchase of the premises from the defendant W. O. Dunlap. Under this contract, copy of which was attached as an exhibit to second amended answer, the appellants agreed to pay a purchase price, which included the amount of notes and mortgage sued on. They were, by the contract, to receive a warranty deed from defendant Dunlap upon payment of $2,000 and contemporaneously to deliver to him notes and mortgage for remainder of the purchase price.

The initial payment of $2,000 under the purchase contract had not been made at time of the trial, but appellants alleged that, had they not been interfered with, they could and would have realized enough on the apple crop to pay a substantial part of the first payment. The trial court adjudged due the full principal amount of said notes with accrued interest,

entered decree foreclosing the mortgage, and directed a sale of the mortgaged premises in conformity with the practice of the court. It is from such decree that the appellants Whitely have prosecuted this appeal.

It is first contended, as a ground for reversal, that the complaint does not state facts sufficient to constitute a cause of action for the appointment of a receiver, and, if it does, that the court abused its discretion in making the appointment. The complaint as grounds for receivership set up an impaired security and a pledge of the rents, issues, and profits by the terms of the mortgage. The sworn allegation of impaired security is sufficiently met by denial under oath, and, under established principles, it was thus removed as a ground for the appointment in the absence of further proof. 34 Cyc. 133, Elkhorn Hazard Coal Co. v. Fairchild, 191 Ky. 276, 230 S. W. 61. The appointment must therefore be sustained, if at all, by virtue of the asserted pledge of the rents, issues, and profits contained in the mortgage, plus the allegation that appellants were diverting the proceeds of the pledge. The granting clause of the instrument contains the following language immediately following the description, to wit: "Together with all and singular the lands, tenements, hereditaments and appurtenances, thereunto belonging or in anywise appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof; and all the estate, right, title, interest, claim and demand whatsoever of the said parties of the first part, either in law or

in equity, of, in and to the above granted, bargained, sold and described premises, with the appurtenances."

Upon this language appellee is compelled to rely as a specific and separate pledge of rents, issues, and profits, warranting a court in appointing a receiver in foreclosure proceedings to impound them and to apply them finally in satisfaction of the debt, in case there should be a deficiency. The majority, without now denying that there may be such a separate and specific pledge as will entitle the mortgagee to such relief, upon mere exhibition of the mortgage, and without a showing of equitable grounds, are of the opinion that the mere use of the foregoing formula in mortgages does not manifest such intent or accomplish such result. It is therefore the holding of this court that the trial court committed error in appointing a receiver of the apple crop growing on the mortgaged premises.

The writer is unable to support the majority view that the language of the mortgage just quoted does not constitute a pledge of the rents, issues, and profits. The language employed plainly purports to cover the land "together with the rents, issues and profits thereof." This has been several times held to give the mortgagee the right upon default to impound the rentals for the protection of the mortgage debt. In fact, the writer considers this the rule established by the few cases in which the sufficiency of the language in question to constitute a pledge of rentals has been challenged or adjudicated. Handman v. Volk,

99 S. W. 660, 30 Ky. Law Rep. 818; Brashfield & Son v. Northwestern Mut. Life Ins. Co., 233 Ky. 94, 25 S.W.(2d) 72; Carolina Portland Cement Co. v. Baumgartner, 99 Fla. 987, 128 So. 241; Cowdery v. London & San Francisco Bank, 139 Cal. 298, 73 P. 196, 96 Am. St. Rep. 115; Rohrer v. Deatherage, 336 Ill. 450, 168 N. E. 266; Hastings v. Wise, 89 Mont. 325, 297 P. 482.

It is true the mortgagor ordinarily is entitled to possession until foreclosure and sale under our decisions, and rents and profits are an incident of possession. But the Legislature by section 8, c. 36, Laws 1876 (section 571, Code of 1915, omitted by inadvertence from 1929 Comp.) provided: "In the absence of stipulation to the contrary, the mortgagor of real or personal property shall have the right of possession thereof."

Construing the present mortgage in the light of this statute, the language in question seems to the writer to amount to a stipulation by the mortgagor that, upon condition broken, the mortgagee may avail himself of the pledge of the rentals contained in the mortgage.

If the language is not to be thus interpreted and given effect according to its purported meaning, it can only be by reason of some historical association of the words employed depriving them of such meaning. Parties to an instrument containing this language would in the writers' opinion take the language at its face value, and justifiably believe it to constitute a lien on rents, issues, and profits, as well as on the land; although

as to rentals it could not be made effective until after default. Nor is there anything, so far as the writer is advised, to indicate that the Legislature in 1876 in enacting section 571, Code of 1915, had in mind any adopted or associated meaning for this particular language which would deny to its subsequent or continued use, if indeed it was in common use in this state at all at that time, its sufficiency to constitute "a stipulation to the contrary" within the purview of that section.

The value of rents, issues, and profits accruing between commencement of foreclosure and confirmation of sale is in many cases appreciable, and affords substantial security. No doubt many mortgages heretofore have been accepted in this state in the belief that this language does give what it appears to give; a lien both upon the land, and the "rents, issues and profits thereof." With all deference to the opinion of the majority on this point, the writer is unable to reach the same conclusion, and hence thus records his views. Additional citations which throw light upon the subject, and, as he views them, tend to support the conclusion reached by the writer, although the Colorado case cited is not in point, are Moncrieff v. Hare, 38 Colo. 221, 87 P. 1082, 7 L. R. A. (N. S.) 1001; Case Note 4 A. L. R. 1405 et seq., supplemented in 55 A. L. R. 1020; 1 Wiltsie on Mortgage Foreclosures (4th Ed.) §§ 555 et seq.; 2 Jones on Mortgages (8th Ed.) §§ 975 et seq.; 2 Clark on Receivers, §§ 957 to 962.

■ It is next urged that there is a total failure of proof to support the finding made by the court in its decree of indebtedness due or unpaid to plaintiff on said notes. In fact, it is argued there is no evidence to show anything due or unpaid on any of the notes.

It would be a sufficient answer to this contention to say that appellants took no exception to the court's finding of indebtedness due contained in the judgment, nor made any request for a specific finding on the subject. The point seems not to have been called to the attention of the trial court in any manner disclosed by the record. The point made, no doubt, is suggested by reason of the absence of affirmative testimony of any witness that the notes are unpaid. They show on their face that they are past due, if unpaid.

The notes themselves were introduced in evidence. They came from plaintiff's possession, and are devoid of marks or indorsements showing payment. Possession of the notes by the payee, or his personal representative, or the plaintiff, is prima facie evidence of nonpayment. 8 C. J. 1014; 3 Jones on Mortgages (8th Ed.) 1868; 42 C. J. 108. See, also, § 45-603, Comp. 1929. There could be no failure of proof so long as this prima facie evidence remained unrebutted. And this is aside from the effect of the admission of the mortgage indebtedness as outstanding contained in the purchase contract pleaded and placed in evidence by appellants.

■ Finally, it is urged by appellants that there is an absence of indispensable parties. This is a point, too, not brought to the attention of the trial court. The objection, if well taken, may be noticed, however, though

not raised by the pleadings or suggested by counsel. Walrath v. Board of County Commissioners, 18 N. M. 101, 134 P. 204. It is asserted by appellants that there is neither allegation nor proof that the original mortgagors have ever parted with their equity of redemption in the property.

▇▇ There is some basis for such assertion. The original mortgagors are not joined as defendants. Had they been so joined in a complaint failing to negative title in them, an allegation of such title would be implied. Franklin v. Harper, 32 N. M. 108, 252 P. 170. The complaint in this case makes no positive allegation of title in any one. It does allege that defendant Dunlap claims ownership of the mortgaged premises, and, in his answer containing a blanket admission of all the allegations of the complaint, he, of course, admits such claim.

The proof on title and ownership does not go beyond disclosing that appellants dealt with defendant Dunlap as the owner by contracting with him for a purchase of the premises, and for a conveyance of same to them by warranty deed. The court makes no specific finding as to ownership; merely finding that plaintiff's rights under the mortgage are superior to the rights of all of the defendants, and that the claims, interest, and demands of the defendants, "if they have any interest or demands," are subject to the mortgage.

We are unable to say from the record whether the holder of the equity of redemption is or is not before the court. He may be, in the person of defendant W. O. Dunlap. And yet this claim of ownership could be based on a contract of purchase with the mortgagors, or some intervening owner, just as the allegation and claim of ownership by appellants in their second amended answer is based on their contract of purchase with defendant Dunlap. The most that can be said is that it does not affirmatively appear from the record that the owner of the equity of redemption is not before the court.

But if it be admitted that the legal title to the real estate foreclosed against is not before the court, it does not follow that the decree of foreclosure should be reversed. There has been much confusion in the use by the courts of the words "necessary" and "proper" when designating parties to litigation. And there is some difficulty in reconciling the decisions, due to a failure to keep in mind the distinction in meaning, or two senses, in which the word "necessary," when applied to parties, is used. The distinction is set forth in 1 Wiltsie on Mortgage Foreclosures (4th Ed.) § 332, page 452, as follows:

"Most textbook writers have considered the subject of parties defendant to mortgage foreclosures under the subdivisions of necessary parties and proper parties. Mr. Jones has defined a necessary party as 'one whose presence before the court is indispensable to the rendering of a judgment which shall have any effect on the property; without whom the court might properly refuse to proceed, because its decree would be practically nugatory.' This definition, however, cannot

be considered logical, nor in accordance with the decisions of the courts; for at present no one can be said to be a necessary party in order to maintain the action, nor necessary in the sense that this omission would defeat the action or render the decree absolutely void.

"The words 'necessary' and 'proper' are used with much looseness, inaccuracy and uncertainty of definition in the courts of our various states,—apparently in disregard of the fact that the words are relative in signification, and that they should be used as descriptive of parties, only with reference to the purposes for which the parties are made defendants to the foreclosure. Under the above definition neither an owner of a part or of the whole of an equity of redemption, nor a subsequent lienor, nor any other person interested in the subject-matter of the action, can be called a necessary party."

In 9 Encyc. Pl. & Pr. 300, the author briefly points out the different meanings attached to the use of the phrase, as follows: "The phrase 'necessary parties' is used in two distinct senses by judges and text writers. It is applied to those whose presence in the suit is essential to its maintenance and validity, and also to those who must be before the court in order that a decree may be rendered which will bind all parties interested in the land and under which a sale may be effected which will transfer the title thereto."

Illustrative of the class of cases in which the phrase "necessary party" is used in the sense first mentioned in the text just quoted, that is to say, to designate a party whose presence is necessary to the maintenance and validity of the suit, may be cited the cases of Walrath v. Board of County Commissioners, 18 N. M. 101, 134 P. 204; Miller v. Klasner, 19 N. M. 21, 140 P. 1107; Page v. Town of Gallup, 26 N. M. 239, 191 P. 460; and Amer. Trust & Savings Bank v. Scobee, 29 N. M. 436, 224 P. 788.

There can be no question but that the owner of the equity of redemption is a necessary, even an indispensable, party, in the second sense in which the term "necessary party" is used in the text last above quoted. As said in Hall v. Nelson, 23 Barb. (N. Y.) 88, an authority much quoted on this point: "There is no doubt that the owner of the equity of redemption is a necessary party to a suit for the foreclosure of a mortgage. The mere statement of this proposition is sufficient to show its correctness, without the citation of any authorities in its support. The action is brought for the express purpose of foreclosing the equitable estate and right to redeem remaining against the mortgage, and of transferring to the mortgagee, or under our practice, to the purchaser at a sale by virtue of the decree, a complete legal title to the mortgaged premises. The very object of the proceeding would, therefore, be completely defeated if the owner of the equity of redemption were not a party. No title could be made that would not de defeasible by the person in whom this equity of redeeming the mortgage remained, not barred or destroyed."

But, incident to foreclosure, it is the uniform practice to join as defendants not only the owner of the equity of redemption, but in addition all subsequent incumbrancers, lienors, and claimants of interest of whatsoever character, after the mortgage. If the legal title is before the court, the subordination to the mortgage of these subsequent liens and interests will be accomplished as a mere incident to the major relief granted, the cutting off of the equity of redemption, and transferring to the purchaser at a sale under the decree a complete legal title to the premises mortgaged.

The absence as a party of the owner of the equity of redemption would not, however, deprive the decree of its efficacy to cut off these subsequent rights, liens, and interests. The decree so rendered would not be binding on the owner of the legal title, if he were not present. It would nevertheless operate as a valid foreclosure against those properly before the court. A sale under the decree would convey no title, and would operate merely as an equitable assignment of the mortgage to the purchaser other than the mortgagee. 3 Jones on Mortgages (8th Ed.) § 1793. And, if the mortgagee himself is the purchaser, he becomes merely a mortgagee in possession. Id. § 1781.

The effect of a decree under such circumstances is seen in the cases of Page v. Turk, 43 Okl. 667, 143 P. 1047; Murray v. Creese, 80 Mont. 453, 260 P. 1051; Livingston v. New England Mtg. Security Co., 77 Ark. 379, 91 S. W. 752.

In view of the foregoing, the last point urged by appellants, that there is an absence of indispensable parties, cannot be sustained. The decree binds those before the court. It is unfortunate if the appellee has not before the court the holder of the legal title and owner of the equity of redemption, for the rights of this absent person, if any such there be, will be unaffected by the decree and sale thereunder. If he is not a party, a separate and independent suit would be necessary to cut off his rights. But the fact of the omission of such party, if true, should not and does not deprive the appellee of the benefit of the decree, as against claimants of interests subsequent to the mortgage actually brought before the court.

The result is that the order appointing the receiver, and so much of the final decree as continues him in office, will be reversed. Except as thus modified, the decree will be affirmed. The further proceedings in said cause will be without prejudice to the decree of foreclosure and the proceedings had thereunder. The appellants will recover their costs in this court.

It is so ordered.

BICKLEY, C. J., and WATSON and PARKER, JJ., concur.

HUDSPETH, J., did not participate.