[Civ. No. 5780. Third Appellate District.—April 2, 1937.]

WESTERN FRUIT GROWERS, INC. (a Corporation), Appellant, v. THE SECURITY TITLE INSURANCE AND GUARANTEE COMPANY (a Corporation) et al., Respondents.

Simpson & Simpson and W. E. Simpson for Appellant.

Swing & Swing for Respondents.

THOMPSON, J.—The plaintiff has appealed from that portion of a judgment which was rendered against it refusing

to enjoin the trustees of two separate trust deeds executed to secure the same indebtedness from selling the property for an alleged default in the payment of instalments of the first secured note when they became due. The junior trust deed was executed *subject* to a senior trust deed on the same property to secure another promissory note. The first trust deed provides that it was executed to secure payment of a $10,000 note "according to its terms . . . and *any renewal or extension thereof*". The beneficiary of the junior trust deed was not a party to that note. After the execution of the second trust deed, the beneficiary of the first trust deed consented in writing to extend the times fixed by the secured note for the payment of two instalments thereof. The extension of time for payments was granted and one instalment was actually paid before the beneficiary of the second trust deed served notice of the alleged default. The second instalment was not then due according to the extended time for payment thereof. The court found that plaintiff was in default, notwithstanding the extension of time, for failure to pay the two instalments at the times originally fixed by the first note, and that the beneficiary of the second trust deed was therefore authorized to declare the entire indebtedness due and foreclose his lien by sale of the property.

The cause was heard upon stipulated facts. The record shows that plaintiff owns two separate tracts of land in San Bernardino County. The first parcel is a lot in Redlands, which we shall refer to as tract "A". The second consists of four lots in block four of the Henry L. Williams tract of Rancho San Bernardino, which we shall call tract "B". September 18, 1931, for a valuable consideration the plaintiff executed its promissory note for the sum of $42,500, payable to Robert F. Garner, Jr., in specified instalments due at designated dates. This note contained the usual condition that upon default of any payment of principal or interest, at the option of the holder of the note, the entire unpaid portion of the note might be declared to be immediately due. This note was secured by a trust deed on tract A above mentioned, which named the Security Title Insurance and Guarantee Company, as trustee, and Robert F. Garner, Jr., as beneficiary thereof.

July 25, 1932, for a valuable consideration, the plaintiff executed its promissory note for the further sum of $10,000,

payable to Security-First National Bank of Los Angeles, in specified instalments due at designated dates. This note contains the same provision regarding the option of the holder to declare the unpaid balance due upon default of any payment of principal or interest. This note was secured by a trust deed on tract B above mentioned. This trust deed provides that it was executed for the purpose of securing the $10,000 note and interest according to its terms, *"and any renewal or extension thereof"*.

December 27, 1932, for a valuable consideration, the plaintiff executed another trust deed for additional security for the payment of the first $42,500 note dated September 18, 1931, upon tract B above mentioned. This trust deed named the Security Title Insurance and Guarantee Company, as trustee, and Robert F. Garner, Jr., as beneficiary thereof. It provides that:

"Said trust deed *is second and subject to* a trust deed of record in the amount of $10,000, *for the purpose of additional security,* for

"First: Payment of the indebtedness evidenced by one promissory note *(and any renewal or extension thereof)* substantially in form as follows: . . . "

It is not contended that the plaintiff was in default of any instalments due upon this first $42,500 note. It is, however, asserted the plaintiff was in default of payments of two instalments on the second $10,000 note secured primarily by a trust deed on tract B of plaintiff's land. That note provided for the payment of one instalment of $2,500 on July 25, 1933, and of another instalment of $2,500, July 25, 1934, neither one of which was paid at those dates. However, on September 28, 1934, before notice of default and foreclosure had been served, the Security-First National Bank of Los Angeles, the beneficiary of the trust deed and holder of that $10,000 note extended in writing the dates of these two payments as follows: $2,500 to be paid by January 25, 1935, which was again extended by letter to May 16, 1935, and the balance of the note, to wit, $7,500 and interest before July, 1936. This first instalment of $2,500 and interest was paid on May 16, 1935. The balance was not due under the extended time for its payment until the following July.

On May 25, 1935, after payment of the $2,500 instalment, the respondent, Garner, notified the plaintiff of his option

to declare the entire indebtedness due which is represented by both promissory notes. He then proceeded to foreclose the trust deeds for the alleged default of payments. This suit to enjoin the sale of property was then instituted. The court adopted findings favorable to the defendants, and rendered judgment denying a permanent injunction as prayed for, but did grant a provisional injunction to preserve the *status quo* until the cause was finally determined on appeal. The plaintiff then perfected this appeal.

The trust deed which is involved on this appeal was not executed primarily to secure the payment of the $10,000 note, dated July 25, 1932. This trust deed merely creates a junior lien upon tract B "subject to" the senior deed which was executed to secure the $10,000 note. This second trust deed does provide that "Trustor promises and agrees, . . . : 4. To pay . . . (b) *when due*, all incumbrances (including any debt secured by deed of trust) and/or interest thereon, which appear to be liens or charges upon said property or any part thereof prior to this deed of trust . . . " This deed of trust then provides that:

"Should breach or default be made by Trustor in payment of any indebtedness secured hereby and/or in performance of any obligation, covenant, promise or agreement herein, or in said note contained, then Beneficiary may declare all sums secured hereby immediately due by the execution and delivery to Trustee of a written Declaration of Default and Demand for Sale."

The question which is involved in this case is whether the time prescribed for the payment of the instalments of the first $10,000 note may be extended by consent of the maker and holder of that note so as to bind the beneficiary of the junior trust deed, without his consent.

The respondents accepted this junior lien in the form of a second trust deed "subject to", and with both constructive and actual knowledge of the terms of, the senior trust deed which specifically provides that it was executed "for the purpose of securing . . . according to the terms of the [$10,000] promissory note . . . and *any renewal or extension thereof*".

██ It is true that the note, itself, did not contain a clause specifically authorizing the extension of the time for payment of the note or any instalment thereof. But ordinarily the note and trust deed or mortgage which are executed contempo-

raneously to secure payment of an existing debt constitute one contract, which instruments must be construed together. There are exceptions to this rule which do not affect the circumstances which are involved in the present case. We are of the opinion the beneficiary of the junior trust deed in this case should take notice from the language employed in the senior trust deed, above quoted, that the time for payment of the $10,000 note or its instalments might be extended. The first deed contemplates that very contingency, for it provides that it is executed as a lien to secure payment of the note according to its expressed terms, or pursuant to "any renewal or extension thereof".

It is true that plaintiff deferred the payment of two instalments of the $10,000 note beyond the dates when they originally became due. But the times when these two instalments became due were regularly and formally extended in writing, so that they were not actually due or unpaid at the time the beneficiary under the second trust deed gave notice of default. In other words, the defaults were cured by the granting of an extension of time within which to pay them.

Assuming, as we do, that the beneficiary of the first note had a right to extend the time originally designated in the note for payment of instalments thereof, without the consent of the beneficiary of the junior trust deed, the plaintiff was not guilty of default. Having waited until after the first instalment was actually paid, and the second instalment had been regularly extended, it was too late for the beneficiary of the second trust deed to give notice, declaring his option to exercise a right to require the entire indebtedness to be due, and to proceed to sell the property on foreclosure of the trust deed. The note and trust deed were part of the same transaction and must be construed together. The respondents were bound to take notice of the declaration in the first trust deed that the time for paying the note or instalments thereof might be extended. In the case of *Trinity County Bank* v. *Haas,* 151 Cal. 553 [91 Pac. 385], the court said:

"The note and mortgage, *being parts of one transaction,* are to be read together, and the plaintiffs may therefore rely on the provision contained in the mortgage, making the principal due for non-payment of interest at the payees' option, *although the note contains no such provision. . . .*

"If after a default in the payment of interest the holder accepts the overdue interest . . . the right to exercise the option is lost. And we think it is equally lost if before the option has been in fact exercised the defaulting debtor pays or offers to pay the overdue interest. Until such option has been exercised the principal of the note is not due." (*Stalder* v. *Riverside Groves & Water Co.,* 167 Cal. 560 [140 Pac. 252].)

The respondents concede that:

"The right to extend the time for payment of a note by subsequent agreement is a privilege which the maker and holder of a note have, as between themselves, *without any previous agreement therefor.* This privilege may be exercised and the due date of any note may be extended by agreement between the maker and the holder so long as such extension does not contravene other promises or agreements made with third persons, or violate intervening rights of third persons."

In other language, it is conceded the beneficiary of the senior trust deed had a perfect right to extend the time for payment of the two instalments of the $10,000 note, provided that extension did not violate the rights of the beneficiary of the junior trust deed to his detriment, or impair his lien upon the property as additional security for the payment of the former $42,500 note.

The foreclosure of a trust deed given to secure the payment of a promissory note, like the foreclosure of a mortgage, is equitable in its nature. Conceding that the extension or delay in the payment of the two instalments of the $10,000 note did modify the lien created by the second trust deed, the beneficiary may not complain of that fact, unless that delay was detrimental to the respondents' security.

In the case of *Hastings* v. *Wise,* 89 Mont. 325 [297 Pac. 482], it was held that a grantee of real property "subject to all existing mortgages and liens of record" took the property "chargeable with knowledge of the existence of the mortgages *and that they might be extended".*

In the case of *Vitt* v. *Rogers,* 81 Mont. 120 [262 Pac. 164], it was held the right to extend the maturity date of a note secured by mortgage exists even though prior thereto the rights of a third party attach. The court said:

"When the subsequent mortgagees took their mortgage in June, 1920, plaintiff's mortgage was valid and subsisting. . . .

When the mortgagors and plaintiff extended the maturity of the debt to a date within the eight-year period and plaintiff commenced his action to foreclose the mortgage within two years of the new maturity date, we fail to see how the defendants were injured in any way. We do not see that they are in a worse position than the one they were in when they took their second mortgages. The burden resting upon them now is no heavier than it was then. They are asking an advantage which will come to them if plaintiff's mortgage is wiped out, but they do not show that they have in any manner been placed at any disadvantage. The equities are not with but against them."

The case last cited further states:

"Whether, injury being shown to intervening third parties, a court of equity will declare the renewal or extension of a mortgage under section 8264 ineffectual as to them, we need not now consider."

The last-quoted paragraph applies to the present case for the reason that there is no evidence in this case that the third party in this transaction was actually injured by the extension of time within which to pay the challenged instalments.

The effect of permitting the respondents in this case to take advantage of an extension of time for the payment of instalments of a note which was not given for their benefit would appear to be inequitable, in the absence of proof of detriment to the respondents' lien on that account, since the beneficiary and the trustor under the first trust deed were in good faith in agreeing to the extension pursuant to the provisions of their trust deed, believing as they had a right to assume, that the beneficiary of the junior trust deed was bound to take notice of the fact that the extension of time for payment was authorized by their contract and might occur.

The record contains no evidence that the respondents were damaged by the delay in the payment of the two instalments on the $10,000 note. They do say in their brief:

"The right to insist that the indebtedness secured by the Cowgill trust deed be paid *as and when due* was one of the most important and essential terms contained in Garner's second trust deed *affecting its value as security*. Parcel B is an orange grove property, subject to great fluctuation in value, depending on market conditions for fruit, upon frosts, upon

neglect to properly care for, farm, fertilize, fumigate, smudge, etc.''

But this record is absolutely devoid of evidence to indicate that the mortgaged premises consist of an orange grove, or that it has been neglected or affected in any manner whatever by the delay in paying the instalments of the first note. There is no evidence that the delay impaired the respondents' lien or diminished its value. It would be unjust and inequitable to permit the sale of land under a second deed of trust given as additional security for another debt, merely because the time for payment of two installments of the note secured by the senior trust deed was extended.

The permanent injunction should have been granted restraining the respondents from selling tract B of the San Bernardino land for the alleged default in payment of the promissory notes involved or any instalments thereof.

The judgment is reversed, and the court is directed to render judgment for the appellant enjoining the respondents from selling the property, as prayed for.

Plummer, J., and Pullen, P. J., concurred.